IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **Mohammed Ahmed Ali Al-Asadi**, *et al.* ) | |
| ) | 1:05-cv-02197 (HHK) |
| *Petitioners*, ) | |
| ) | |
| *v.* ) | |
| ) | |
| **George W. Bush**, *et al.*, ) | |
| ) | |
| *Respondents.* ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO RESPONDENTS' MOTION TO STAY PROCEEDINGS PENDING APPEALS**

**AND**

**IN FURTHER SUPPORT OF PETITIONERS' MOTION FOR IMMEDIATE ISSUANCE OF A WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2243, OR, ALTERNATIVELY, TO ISSUE AN ORDER TO SHOW CAUSE**

This memorandum of points and authorities is respectfully submitted on behalf of Petitioner Mohammed Ahmed Ali Al-Asadi ("Petitioner Al-Asadi") in opposition to Respondents' Motion to Stay Proceeding Pending Related Appeals, and in further support of Petitioner's Motion For the Immediate Issuance Of A Writ Of Habeas Corpus Pursuant to 28 U.S.C. § 2243, Or, Alternatively To Issue An Order To Show Cause.

**PROCEDURAL HISTORY**

Petitioner Al-Asadi, a Yemeni national who is currently being held by Respondents virtually *incommunicado* at Guantánamo Bay, filed a petition for habeas corpus in this Court on Nov. 9, 2005 (Docket No. 1). On Nov. 18, 2005, Petitioner moved for the immediate issuance of a writ of habeas corpus or, in the alternative, and order to show cause pursuant to the plain language of 28 U.S.C. 2243. (Docket No. 2). Fourteen days

1

later on Dec. 2, 2005, Respondents filed a *Motion to Stay Proceedings Pending Related Appeals and Opposition to Petitioners' Motion for the Immediate Issuance of a Writ of Habeas Corpus Pursuant to 28 U.S.C. §2243 or, Alternatively, to Issue an Order to Show Cause* (Docket Nos. 6,7) ("Respondents' *Motion and Opposition*").

Respondents' *Motion and Opposition* addresses three separate issues presently before this Court. First, Respondents seek to stay the proceedings in this case pending resolution of all appeals in *Khalid v. Bush,* 355 F. Supp. 2d 311 (D.D.C. 2005) (Leon, J.), *appeals docketed sub nom. Boumediene v. Bush*, Nos. 05-5062, 05-5063 (D.C. Cir. Mar. 2, 2005), and *In re Guantánamo Detainee Cases,* No. 02- CV-0299, et al., 355 F. Supp. 2d 443 (D.D.C. 2005), *appeal on petition for interlocutory appeal*, No. 05-5064 (D.C. Cir. Mar. 10, 2005). Second, Respondents oppose Petitioner's *Motion for the Immediate Issuance of a Writ of Habeas Corpus Pursuant to 28 U.S.C. §2243 or, Alternatively, to Issue an Order to Show Cause,* Nov. 18, 2005 (Docket No. 2). Third, Respondents indicate that they do not object to the entry of the protective order previously entered in the other Guantánamo detainee cases, along with appropriate supplementary orders.

Because Respondents filed a single memorandum of points and authorities both in support of their motion for a stay and in opposition to Petitioner's motion for immediate issuance of a writ of habeas corpus, Petitioner respectfully submits this consolidated memorandum of points and authorities in further support of his motion and in opposition to Respondents' motion. As explained below, Petitioners' motion for the issuance of a writ of habeas corpus should be granted, and Respondents' motion for a stay denied. Alternatively, if a stay pending appeal in related cases is entered, the Court should require Respondents to produce a factual return.

2

Finally, Petitioners consent to entry of the Protective Orders previously entered in related Guantánamo detainee cases, which are attached to Respondents' *Motion and Opposition* as Exhibits A through C. (Docket Nos. 6,7). Because the Government will not allow privileged communications between undersigned counsel and Mr. Al-Asadi until the Protective Order is entered, Petitioners respectfully ask that the orders be entered promptly.[1]

## ARGUMENT

### I.     Respondents' Motion for A Stay Should be Denied

The Respondents have not met their burden under the law to justify a stay in these proceedings. A party seeking a stay of judicial proceedings "must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else." *Dellinger v. Mitchell*, 442 F.2d 782, 786 (D.C. Cir. 1971), *quoting Landis v. North American*, 299 U.S. 248, 255 (1936). As such, "[a]ny protracted halting or limitation of plaintiffs' right to maintain their case would require not only a showing of 'need' in terms of protecting the other litigation involved but would also require a balanced finding that such need overrides the injury to the parties being stayed." *Dellinger*, 442 F.2d at 787; *see also Cherokee Nation of Oklahoma v. United States,* 124 F.3d 1413, 1416 (Fed. Cir. 1997). And in any event, "The right to proceed in court should not be denied except under the most extreme circumstances." *Klein v. Adams & Peck*, 436 F.2d 337, 339 (2d. Cir. 1971). Thus, as is the case here, when a party would be significantly injured by a stay, the

---

[1] This consent and request is made without prejudice to Petitioners' right to challenge or seek modification of any particular terms of the Protective Order in the future.

3

movant must produce a significant showing of hardship—if the case moves forward—to balance that injury.

Here the government has made no such showing of hardship if the case proceeds with which to balance against the very real injury to Petitioner Al-Asadi. The Respondents' main theme in favor of a stay is that judicial efficiency will be served by waiting to see if the Court of Appeals reverses Judge Green's decision in *In re Guantanamo Detainee Cases*. Any balancing of harms must begin with the undeniable fact that Petitioner Al-Asadi has been incarcerated virtually *incommunicado* for over three years without charge, access to counsel or fundamental minimal due process protections. Furthermore, the government has recently released official documents confirming reports from released detainees and news organizations that Guantánamo detainees have been subject to systematic physical and mental abuse that can only be described as torture.[2] In effect, a stay would virtually guarantee that Petitioner Al-Asadi would be forced to endure a continued lengthy indefinite detention under widely publicized and admittedly abusive conditions of confinement.

Furthermore, Respondents' motion for a stay should be denied, because it would be wholly inconsistent with a long line of cases emphasizing that habeas cases must be handled expeditiously. Writs of habeas corpus are intended to afford a "swift and imperative remedy in all cases of illegal restraint or confinement." *Fay v. Noia,* 372 U.S. 391, 400 (1963) (internal quotations omitted); *see also e.g.*, *Preiser v. Rodriguez*, 411 U.S. 475, 496 (1973) ("the federal habeas statute provides for a swift, flexible, and

---

[2] These documents were released under a court order entered in litigation brought under the Freedom of Information Act by civil rights, humanitarian and veterans' organizations. See <u>American Civil Liberties Union v. Department of Defense</u>, No. 04-CV-4151 (AKH) (S.D.N.Y.). The documents can be viewed at http://action.aclu.org/torturefoia/.

4

summary determination."); *Carafas v. LaValle*, 391 U.S. 234, 238 (1968) (habeas review is designed "to provide an effective and speedy instrument by which judicial inquiry may be had into the legality of the detention of a person"); Stack v. Boyle, 342 U.S. 1, 4 (1952) ("Relief in this type of case must be speedy if it is to be effective.").

Indeed, express statutory language compels prompt disposition of habeas corpus petitions. "A court, justice or judge entertaining an application for a writ of habeas corpus *shall forthwith* award the writ or issue an order directing the respondent to show cause why the writ should not be granted ...." 28 U.S.C. § 2243 (emphasis supplied). The statute plainly directs district courts to "summarily hear and determine the facts, and dispose of [a habeas corpus petition] as law and justice require" and requires the court to hold a hearing within five days of the return of the writ, which must itself be within three days, absent good cause. *Id.* The tight time limits for the Return set out in § 2243 are especially warranted in the present case, in which Mr. Al-Asadi's petition, on its face, denies any valid ground for holding him.

**II.     In Any Event, The Court Should Order Respondents to Produce a Factual Return Within Thirty Days.**

Respondents have had nearly four years to determine the grounds for Petitioner's detention, and throughout this entire time, Respondents have not been limited in their treatment of Petitioner by the rights afforded to virtually every other federal prisoner. For example: (1) Respondents have had unfettered access to Petitioner for the purpose of interrogation; (2) Respondents have had access to documentary evidence obtained without the requirements of probable cause or warrant; and (3) Respondents have not been required to cooperate or disclose findings with Petitioners' counsel. In short, Respondents have had utter and comprehensive control over Petitioner and every other

5

potential witness and document, and have not had to endure even the barest inconvenience associated with due process. Having held Petitioner Al-Asadi for nearly four years, even if a stay is now entered, Respondents should be required expeditiously to state the grounds for his continued detention.

### a. *A Factual Return is Critical to Counsel's Ability to Effectively Represent Petitioner*

Respondents have not provided Petitioners' counsel with any information about Mr. Al-Asadi. As well, the record discloses nothing about Al-Asadi's age or state of health, where, when, or why he was arrested, how he came to be detained at Guantánamo Bay, how long he has been held there, or even whether he has been declared an "enemy combatant." Respondents' counsel have not provided the most basic, non-classified information about Mr. Al-Asadi; has insisted on security clearance of counsel; and has restricted travel to Guantánamo Bay Naval Base unless and until government clearance has issued. Petitioners' counsel cannot effectively represent Petitioner without access to the information provided in the factual return. "Indeed, even initial conversations by counsel with their clients may be very difficult without access to that basic factual information." *Abdulla Thani Faris Al-Anazi v. Bush*, 370 F. Supp. 2d 188, 199-200 (D.D.C. 2005).[3]

There is good reason to obtain basic information now. The Wall Street Journal reported earlier this year that U.S. military "[c]ommanders now estimate that up to 40% of the 549 current detainees probably pose no threat and possess no significant

---

[3] For previously filed authorities and a collection of the many other Guantánamo cases requiring such a production. *See* Petitioners' *Memorandum of Points and Authorities in Support of Petitioners' Motion for the Immediate Issuance of a Writ of Habeas Corpus or, Alternatively, to Issue an Oreder to Show Cause*, *Al-Asadi v. Bush*, 1:05-cv-02197 (filed November 18, 2005) (Docket No. 2)**.**

information." Christopher Cooper, *Detention Plan: In Guantánamo, Prisoners Languish In a Red Sea of Tape.*, Wall Street Journal, Jan. 26, 2005, at A1. "Military officials at Guantánamo say they have specifically recommended the release of about 100 of those men." *Id.*

      ***b.***      ***The Burden to Respondents of Producing a Factual Return is Minimal.***

Despite generic assertions to the contrary, the burden of production on the government Respondents of a factual return is minimal. In every Guantanamo detainee case where Respondents have been ordered to produce a factual return, the return has consisted of the record of proceedings before the detainee's Combatant Status Review Tribunal, or "CSRT". By July 2005, a CSRT was conducted for every prisoner in the custody of the Department of Defense ("DOD") at Guantánamo. *See* Jennifer K. Elsea, Leg. Atty., Am. Law Div., *CRS Report for Congress: Detainee at Guantanamo Bay* (July 20, 2005), at 2, *available at* http://www.fas.org/sgp/crs/natsec/RS22173.pdf.

In fact, a sampling of unclassified CSRT files for about 60 detainees can be viewed on the Internet as a result of a successful Associated Press Freedom of Information Act case. *See* http://wid.ap.org/documents/detainees/list.html (the files typically have name and country redacted). A cursory review of any of these files shows that the government already has well organized factual files that it can produce quickly. It makes no sense for the government to produce files, even in redacted form, to the Associated Press for viewing by the entire world and not produce the same file to a petitioner's attorney.

Finally, the government's generic references to the expenditures of its resources and logistical burden has not persuaded this court to delay ordering the return in other Guantánamo detainee cases. To the contrary, this court has been confident that the

government Respondents can handle this task. In fact, in several cases the government has been ordered to provide factual returns within seven days and was able to comply without issue. *See e.g., Errachidi v. Bush*, 05-cv-640, docket no. 15 (April 21, 2005 order entered by Sullivan, J., requiring government to make its return within seven days) and docket no. 16 (April 26, 2005 filing of factual return by Respondents). Petitioner respectfully requests that this Court require that factual returns be filed within 30 days.

> **c. And, in the Event that this Court Enters a Stay in this Case, A Factual Return is Especially Appropriate**

As well, if this Court does grant the Respondents' request for a stay of proceedings in this case, requiring a factual return is especially appropriate. As noted above, in considering a request for stay, the Court must balance the respective interests of the parties and the relative harm the stay would inflict. "Any protracted halting or limitation of plaintiffs' right to maintain their case would require not only a showing of 'need' in terms of protecting the other litigation involved but would also require a balanced finding that such need overrides the injury to the parties being stayed." *Dellinger*, 442 F.2d at 787. Thus, if a court grants a stay, that court may specify protective conditions to balance the hardship necessarily imposed on the party whose suit or execution of judgment has been stayed pending appeal. *Cooks v. Fowler,* 459 F.2d 1269, 1272-73 & n.27 (D.C. Cir. 1971) (affirming condition of stay requiring tenant appealing judgment to deposit funds in court registry pending appeal); *see also City of Portland v. Federal Maritime Comm'n,* 433 F.2d 502, 504 (D.C. Cir. 1970) (directing the proponent of a stay in a case challenging shippers' exclusion of one city's port from service to "be prepared to state reasons why this court should not impose a conditional stay requiring the rotation of service among the ports involved pending final review and determination"); *Scott v.*

8

*Scott,* 382 F.2d 461, 462 (D.C. Cir.1967) (discussing a stay of execution of judgment conditioned upon support payments).

In fact, where the condition imposed on the proponent of the stay is "'neither heavy nor unexpected,'" imposing a protective condition is well within a court's discretion. *Cooks*, 459 F.2d at 1273 (*quoting Bell v. Tsintolas Realty Co.,* 430 F.2d 474, 482 (D.C. Cir. 1970) ("[w]e have little doubt that [a court] may fashion an equitable remedy to avoid placing one party at a severe disadvantage during the period of litigation")). Accordingly, the Court should:

> guard against depriving the processes of justice of their suppleness of adaptation to varying conditions. *Landis v. North American Co.,* 299 U.S. 248, 256 (1936). Coextensive with the district court's inherent power to stay proceedings is the court's power to craft a stay that balances the hardships to the parties. *Id.* at 255 (noting concerns regarding the stay causing "even a fair possibility . . . [of] damage to some one else"); *see also Clinton v. Jones,* 520 U.S. 681, 707 (1997) (noting that "burdens [to the parties] are appropriate matters for the District Court to evaluate in its management of the case.").

*Al-Oshan v. Bush*, No. 05-cv-520 (D. D.C. Mar. 31, 2005) (Urbina, J.) (Order, Memorandum granting Motion for Stay). Thus, this Court should order the government Respondents to produce a factual return within 30 days. And in the event a stay is entered, the stay's harm to Petitioners should be balanced by an order to produce a factual return regarding Petitioner Al-Asadi's detention.

## CONCLUSION

For the aforementioned reasons, Petitioner respectfully requests that the Court enter the Protective Order, deny Respondents' motion to stay these proceedings, and grant Petitioner's motion for the Issuance of a writ of habeas corpus, or in the alternative, an order to show cause. If the Court grants Respondents' motion for a stay, Petitioner respectfully requests that the Court order Respondents to provide counsel with

Petitioner's full factual return within thirty days, and allow for the filing and disposition of motions for emergency relief.

Date: 12/27/2005                                         Respectfully Submitted:

                                                         Counsel for Petitioners:

                                                         ___/s/ **Tina M. Foster**_____
                                                         Barbara J. Olshansky (NY0057)
                                                         Director Counsel
                                                         Tina M. Foster (TF5556)
                                                         CENTER FOR
                                                         CONSTITUTIONAL RIGHTS
                                                         666 Broadway, 7th Floor
                                                         New York, New York 10012
                                                         Tel: (212) 614-6455
                                                         Fax: (212) 614-6414