IN THE UNITED STATES DISTRICT
COURT FOR THE DISTRICT OF COLUMBIA

---

| | |
|---|---|
| **MOHAMMED AHMED ALI AL-ASADI**, ) | |
| ) | |
| **HAFIZULLAH AHMED ALI AL-ASADI**, ) | |
| Next Friend of Mohammed Al-Asadi ) | |
| ) | |
| Guantánamo Bay Naval Station, ) | |
| Guantánamo Bay, Cuba ) | |
|     Petitioner ) | |
| ) | |
| v. ) | |
| ) | Case No. 05cv2197-HHK |
| **GEORGE W. BUSH** ) | **To Be Heard by Magistrate Judge** |
| ) | **Kay Under LCvR 72.2(a) and Nov.** |
| ) | **November 2, 2005 Order in** |
|   President of the United States ) | **05-2104 (CKK)** |
|   The White House ) | |
|   1600 Pennsylvania Avenue, N.W. ) | |
|   Washington, D.C. 20500; ) | |
| ) | |
| **DONALD RUMSFELD** ) | |
|   Secretary, United States ) | |
|   Department of Defense ) | |
|   1000 Defense Pentagon ) | |
|   Washington, D.C. 20301; ) | |
| ) | |
| **ARMY BRIG. GEN. JAY HOOD** ) | |
|   Commander, Joint Task Force - GTMO ) | |
|   APO AE 09360; and ) | |
| ) | |
| **ARMY COL. MIKE BUMGARNER** ) | |
|   Commander, Joint Detention ) | |
|   Operations Group - JTF-GTMO ) | |
|   APO AE 09360, ) | |
| ) | |
|     Respondents ) | |

---

**MOTION SEEKING ENTRY OF THE PROTECTIVE ORDER
AND SEEKING STATUS CONFERENCE OR HEARING ON MOTION**

NOW COMES Petitioner, by and through undersigned counsel, and files this motion seeking entry of the Amended Protective Order and filing of the accompanying Memorandum of Understanding, executed by counsel, attached as Exhibits A, B, and C, which is presently the only means by which the Respondent will permit counsel access to Mr. Al-Asadi in order to advise him regarding these proceedings and the recent developments in the law. It is also the only means by which Mr. Al-Asadi can be afforded the advice of counsel contemplated by the District Court when it appointed the undersigned in this matter. The Court has entered the same protective order in other similarly-situated cases. This Court should grant Petitioner's motion.

Petitioner brings this request to the attention of Magistrate Judge Kay pursuant to the consolidated order entered in Civil Action No. 05-2104 (CKK) by the Calendar and Case Management Committee of the United States District Court for the District of Columbia, which provides that matters "pertaining to logistical issues, such as communications with or visits to clients and counsel" are referred to Magistrate Judge Kay for resolution. *See* Order Referring All Motions Pertaining to Interpretation or Construction of Any Protective Order, Docket No. 5.

## FACTUAL BACKGROUND

Mr. Al-Asadi is presently detained in the Guantanamo Bay military prison. Prior to this Court's appointment of counsel, Mr. Al-Asadi had no meaningful way of securing legal representation for himself. It was only after he was appointed counsel that he filed his habeas corpus petition seeking release on November 9, 2005.

Prior to undersigned counsel's appointment, Respondents moved for a stay of proceedings in 32 cases, including Mr. Al-Asadi's case. *See* Respondent's Motion To Stay Proceedings Pending Related Appeals, Docket No. 6. Respondent sought a stay pending results

of related appellate cases in order to prevent unnecessary duplicative litigation regarding similar issues. *Id.* at 2. However, Respondent specifically states in motion:

> In seeking a stay, however, respondents, do not intend thereby to block counsel access to properly represented petitioner. To that end, *respondents do not object to entry of the protective order* previously entered in other Guantanamo detainee cases, along with appropriate supplementary orders, to permit such access[1]. (emphasis added).

*Id.*

Undersigned counsel have completed the security clearance forms and are awaiting such clearance from the government. It is the undersigned's understanding that such process has been expedited. As soon as clearance is received, counsel plan to meet and confer with Mr. Al-Asadi at the military base in Guantanamo. It is the undersigned's understanding that unless and until the Amended Protective Order is entered, along with the Memorandum of Understanding,[2] (which undersigned are prepared to execute at this time in order to gain access to Mr. Al-Asadi), no such attorney-client visit can occur.

Therefore, Petitioner's counsel seeks entry of the Exhibit A, the Amended Protective Order, Exhibit B, the Revised Procedures for Counsel Access and Exhibit C, the signed Memorandum of Understanding.

## MEMORANDUM OF POINTS & AUTHORITIES

Undersigned counsel ask that the Court consider this issue relating to client visitation and access and enter the attached protective order so that Mr. Al-Asadi can meet with his appointed counsel. The fact that these cases have been stayed, pursuant to an order entered before counsel's appointment in the case is of no moment in determining whether counsel, who has

---

[1] After conferring with opposing counsel, it appears that Respondents are opposing entry of the Amended Protective Order.

[2] While the undersigned may find the need to seek relief from certain portions of the Amended Protective Order, at this time, in order to be able to visit Mr. Al-Asadi, counsel are willing to sign the Memorandum of Understanding, reserving any right to bring future challenges if and when the need arises in the context of the case.

been appointed by the Court, can have access to the client to render legal advice and particularly, to familiarize the client with the American legal system and processes.[3]

## A.    Mr. Al-Asadi has a right to visit with his court-appointed counsel.

'[T]he writ of habeas corpus is the fundamental instrument for safeguarding individual freedom against arbitrary and lawless state action." *Harris v. Nelson*, 394 U.S. 286, 290-91 (1969). "The scope and flexibility of the writ-- its capacity to reach all manner of illegal detention-- its ability to cut through barriers of form and procedural mazes-- have always been emphasized and jealously guarded by the courts." *Id* at 291. "At its historical core, the writ of habeas corpus has served as a means of reviewing the legality of executive detention, and it is in that context that its protections have been strongest." *INS v. St. Cyr*, 533 U.S. 289, 301 (2001).

---

[3] Indeed, Mr. Al-Asadi has genuine claims entitling him to relief. According to the Supreme Court, Mr. Al-Asadi's petition which reflects "allegations - that, although [he has] engaged neither in combat nor in acts of terrorism against the United States, [he has] been held in Executive Detention . . . without access to counsel and without being charged with any wrongdoing - unquestionably describe 'custody in violation of the Constitution or laws or treaties of the United States.'" *See Rasul v. United States*, 542 U.S. 466, 484 n.15 (2004). This is so notwithstanding new legislation enacted after the filing of Mr. Al-Asadi's habeas petition as it is at best questionable whether the new law applies to Mr. Al-Asadi's pending habeas petition and whether the constitutionally doubtful retroactive application of this new law would be upheld.

In fact, this very Court has entered a protective order after passage of the Detainee Treatment Act in a related case, *Mohammad v. Bush*, 05-cv-879 (D.D.C., Jan. 9, 2006). Moreover, a number of other Judges in this District have similarly entered protective orders since passage of the DTA. *See, e.g.,*

*Zadran v Bush*, 05-cv-2367 (D.D.C., Apr. 12, 2006) (Roberts);
*Alsaaei v. Bush*, 05-cv-2369 (D.D.C., Apr. 12, 2006) (Roberts);
*Said v. Bush*, 05-cv-2384 (D.D.C., Apr. 12, 2006) (Roberts);
*Al Shareef v. Bush*, 05-2458 (D.D.C., Apr. 12, 2006) (Roberts);
*Awad v. Bush*, 05-cv-2379, (D.D.C. Apr. 11, 2006) (Robertson);
*Thabid v. Bush*, 05-cv-2398 (D.D.C., Mar. 21, 2006) (Huvelle);
*Razakah v. Bush*, 05-2370 (D.D.C., Mar. 17, 2006) (Sullivan);
*Labed Ahmed v. Bush*, (D.D.C., Mar. 2, 2006) (Sullivan);
*Wahab v. Bush*, 05-886 (D.D.C., Jan. 10. 2006) (Sullivan);
*Bostan v. Bush*, 05-cv-883 (D.D.C., Jan. 9, 2006) (Robertson);
*Khiali-Gul v. Bush*, 05-cv-877 (D.D.C., Jan. 6, 2006) (Robertson).

Courts are authorized to appoint counsel in habeas cases whenever "the interests of justice so require." 18 U.S.C. § 3006A(g).  While there is no Sixth Amendment right to counsel in habeas proceedings, appointed counsel is required when a detainee's due process rights would be violated if he or she were to remain unrepresented. *See Eskidge v. Rhay*, 345 F.2d 778, 782 (9th Cir. 1970).  The most basic well-established precepts of due process require that prisoners (which would include "detainees"[4]) have "meaningful access" to the court system. *See Bounds v. Smith*, 430 U.S. 817, 822 (1977).  Prisoners must be permitted access which is "adequate, effective and meaningful." *Id*. at 845; *see also Ross v. Moffitt*, 417 U.S. 600, 616 (1974) ("meaningful access to the courts is the touchstone").  The Supreme Court has unequivocally held: "Regulations and practices that unjustifiably obstruct the availability of professional representation or other aspects of the right of access to the courts are invalid." *Procunier v. Martinez*, 416 U.S.396, 419 (1974), *overruled in part on other grounds, Thornburg v. Abbott*, 490 U.S. 401(1989); *see also Ex Parte Hull*, 312 U.S. 546, 549 (1941) (the "state and its officers may not abridge or impair petitioner's right to apply to a federal court for a writ of habeas corpus").

The Supreme Court held in *Rasul v. Bush,* 524 U.S. 466 (2004), that the Guantanamo detainees have a statutory right of access under 28 U.S.C. § 2241.  524 U.S. at 473-84.  Under a statutory analysis, the government cannot interfere with a right once the right is established.  In *Al Odah v. United States*, 346 F. Supp. 2d 1 (D.D.C. 2004), the government argued that the Guantanamo detainees do not have right to communicate privately with attorneys because their right to counsel is statutory, not constitutional, and, therefore, the Guantanamo detainees were not on a par with criminal defendants or criminal prisoners.  The *Al Odah* Court held that once

---

[4] Logic dictates that "detainees" who have not been convicted of any offense should have greater due process protections than typical habeas "prisoners" who have been convicted after **public** trials.

the right of access to courts was established, regardless of its source, the right cannot be abridged:

> [T]he case law indicates that where a client has been afforded the right to meaningful access to the courts, this right cannot be abridged, and that the ability to communicate in private with counsel is a crucial part of that meaningful access. In the instant case, Petitioners have been afforded access to the courts, which must necessarily be meaningful, and this meaningful access includes the opportunity to consul with counsel in private.

*Al Odah*, 346 F. Supp.2d at 11 n.12 (citations omitted). *Cf. United States v. Bergeson*, 425 F.3d 1221 (9th Cir. 2005) (rejecting government's assertion of distinction between retained and assigned counsel in right to be free from interference in attorney-client relationship).

The *Al-Odah* Court went on to explain:

> [Detainees] have been detained virtually incommunicado for nearly [four] years without being charged with any crime. To say that Petitioners' ability to investigate the circumstances surrounding their capture and detention is "seriously impaired" is an understatement. The circumstances of their confinement render their ability to investigate nonexistent. Furthermore, it is simply impossible to expect Petitioners to grapple with the complexities of a foreign legal system and present their claims to this Court without legal representation. Petitioners face an obvious language barrier, have no access to a law library, and almost certainly lack a working knowledge of the American legal system. Finally, this Court's ability to give Petitioners' claims the "careful consideration and plenary processing" which is their due would be stymied were Petitioners to proceed unrepresented by counsel.

*Al-Odah*, 346 F. Supp. 2d at 8. The court stated that "Petitioners cannot be expected to exercise this right without the assistance of counsel." *Id*. This case is no exception.

Precluding an individual from being heard without the assistance of counsel works to deprive that individual of due process:

> If in any case, civil or criminal, a state or federal court were arbitrarily to refuse to hear a party by counsel, employed by and appearing for him, it reasonably may not be doubted that such a refusal would be a denial of a hearing, and, therefore, of due process in the constitutional sense.

*Powell v. Alabama*, 287 U.S. 45, 69 (1932). *See generally American Airways Charters v. Regan*, 746 F.2d 865, 872-73 (D.C. Cir. 1984) (Ginsburg, J.) ("We stress particularly that, in our complex, highly adversarial legal system, an individual or entity may in fact be denied the most fundamental elements of justice without prompt access to counsel.")

Here, this Court's appointment of habeas counsel, which must be consistent with the mandates of section 3006A(g) and the Supreme Court's holding in *Rasul*, was apparently due to the desire to protect the due process rights of Mr. Al-Asadi. Thus, it would be consistent with the Court's prior order to allow counsel actually to meet, confer and represent Mr. Al-Asadi in a meaningful manner. In order to do so, the government presently requires entry of the protective order and an executed Memorandum of Understanding evincing counsel's agreement to the terms and conditions set forth in the protective order. Undersigned counsel request entry of the protective order and have executed the attached Memorandum of Understanding.[5] The only effect of entering the Protective Order at this time is to facilitate court-appointed counsel's efficient and timely access to their client, Mr. Al-Asadi.

B.     **Under applicable professional rules and standards, the requirement of meaningful access to the Courts requires access between counsel and client.**

ABA Model Rule 3.2 anticipates that an attorney will "make reasonable efforts to expedite litigation consistent with the interests of the client," while at the same time Model Rule 1.4(a)(2) requires that an attorney "reasonably consult with the client about the means by which the client's objectives are to be accomplished." The Commentary to ABA Rule 1.4 also provides:

> Reasonable communication between the lawyer and the client is necessary for the client effectively to participate in the representation . . . paragraph (a)(3) requires the lawyer to keep the client reasonably informed about the status of the matter, such as significant developments affecting the timing or the substance of the representation.

Comment., ABA Model Rule 1.4. These rules impose a requirement on the lawyer that is hardly arguable – once an attorney undertakes to represent a client, the attorney is obliged to act

---

[5] Indeed, the failure to enter the protective order in Mr. Al-Asadi's case while it was entered in the case of a similarly-situated petitioner also represented by the undersigned's office, appears to be inadvertent. The Federal Defenders of San Diego, Inc. also represent Mr. Al-Bihani in Al-Bihani v. Bush 05-cv-01312, Docket No. 4, in which an Amended Protective Order was granted notwithstanding a stay of proceedings pending the resolution of similar cases in the D.C. Circuit Courts. See Petitioner's Exhibit D. As the litigation now stands, the Federal Defenders of San Diego, Inc. may finally visit with one similarly-situated petitioner, but not Mr. Al-Asadi.

promptly, to communicate with the client about the status of the matter, to expedite the subject of the representation in a reasonable fashion, and to consult with the client about significant decisions that affect the client's interests.

Mr. Al-Asadi filed his habeas petition on November 9, 2005, over five months ago. To date, counsel has been unable to procure any information about Mr. Al-Asadi, not even his native language.[6] Without the ability to visit Mr. Al-Asadi or communicate with him, none of these requirements can be met and Mr. Al-Asadi is effectively denied the representation that this Court deemed necessary when the undersigned was appointed to this case[7].

## **CONCLUSION**

For the foregoing reasons, Petitioner respectfully requests that this Court grant his motion. The relief Petitioner requests is necessary to allow Mr. Al-Asadi access to his court-appointed attorneys and allow for Petitioner to meaningfully petition this Court. If this Court is not inclined to grant Mr. Al-Asadi's motion solely on this filing, Mr. Al-Asadi requests that he be granted an opportunity to address this Court at a hearing on this matter. Mr. Al-Asadi further requests that the hearing be jointly calendared or heard on the same date as <u>Al-Khalaqi v. Bush</u>,

---

[6] Counsel has been informed by Andrew Warden that no information will be given to petitioner's counsel by counsel for the Respondents-- Mr. Al-Asadi's medical condition, his whereabouts, his current mental health status, whether he is currently being interrogated, whether he has been formally declared an "enemy combatant," and whether anyone, including Mr. Al-Asadi's family, has contacted the government or come to the government's attention, seeking information on his whereabouts or condition and all contact information in the possession of the government at this time regarding such persons.

[7] The Federal Defenders of San Diego, Inc.'s "Unopposed Joint Motion for Substitution of Counsel and Appointment of Federal Defenders of San Diego" was filed on March 10, 2006. Docket No. 18. On March 16, 2006, the Honorable Henry H. Kennedy appointed the Federal Defenders of San Diego, Inc. to represent Mr. Al-Asadi. Docket No. 19.

05-cv-00999. Mr. Al-Khalaqi is also represented by the Federal Defenders of San Diego, Inc. and seeking entry of a similar Protective Order[8].

Dated:  May 10, 2006                    Respectfully submitted,


        /s/
**SHEREEN J. CHARLICK**
**ZAKI ZEHAWI**
Federal Defenders
225 Broadway, Suite 900
San Diego, CA 92101-5030
(619) 234-8467  (tel)
(619) 687-2666  (fax)
e-mail: Shereen_Charlick@fd.org
       Zaki_Zehawi@fd.org

---

[8] The Federal Defenders of San Diego were appointed to represent Mr. Al-Khalaqi in Al-Khalaqi v. Bush, 05-cv-00999 on October 14, 2005. Docket No. 5. The request for the joint calendaring of the cases is based on an effort efficiently manage the Federal Defender's of San Diego, Inc.'s time and funding.

## CERTIFICATION AND VERIFICATION

Counsel for Petitioner certifies that the foregoing pleading is true and accurate to the best of her information and belief, and that a copy of the foregoing document has been served this day upon Andrew Warden, counsel for Respondents.

Dated: May 10, 2006

      /s/
**SHEREEN J. CHARLICK**
**ZAKI ZEHAWI**
Federal Defenders
225 Broadway, Suite 900
San Diego, CA 92101-5030
(619) 234-8467  (tel)
(619) 687-2666  (fax)
e-mail Shereen_Charlick@fd.org
      Zaki_Zehawi@fd.org