IN THE UNITED STATES DISTRICT
COURT FOR THE DISTRICT OF COLUMBIA

_____
                                                                              )
**MOHAMMED AHMED ALI AL-ASADI**,          )
                                                                              )
**HAFIZULLAH AHMED ALI AL-ASADI**,        )
Next Friend of Mohammed Al-Asadi                  )
                                                                              )
Guantánamo Bay Naval Station,                          )
Guantánamo Bay, Cuba                                       )
       **Petitioner**                                                     )
                                                                              )
       v.                                                                    )
                                                                              )   Case No. 05cv2197-HHK
**GEORGE W. BUSH**                                          )
    President of the United States                          )
    The White House                                                )
    1600 Pennsylvania Avenue, N.W.                    )
    Washington, D.C. 20500;                                    )
                                                                              )
**DONALD RUMSFELD**                                      )
    Secretary, United States                                       )
    Department of Defense                                       )
    1000 Defense Pentagon                                      )
    Washington, D.C. 20301;                                    )
                                                                              )
**ARMY BRIG. GEN. JAY HOOD**                     )
    Commander, Joint Task Force - GTMO         )
    APO AE 09360; and                                            )
                                                                              )
**ARMY COL. MIKE BUMGARNER**                )
    Commander, Joint Detention                                 )
    Operations Group - JTF-GTMO                        )
    APO AE 09360,                                                      )
                                                                              )
       **Respondents**                                                )
_____)

**PETITIONER'S RESPONSE TO RESPONDENTS' JULY 7, 2006 NOTICE REGARDING
THIS COURT'S JURISDICTION/SUPPLEMENTAL AUTHORITY IN SUPPORT OF
<u>REQUEST THAT THE PROTECTIVE ORDER BE ENTERED</u>**

I.

**BACKGROUND**

On May 10, 2006, Petitioner filed a Motion seeking entry of the Protective Order and advising the Court that the Protective Order had been entered in a number of other Guantánamo *habeas* cases subsequent to the passage of the Detainee Treatment Act ("DTA"). CR 22. Respondents opposed the motion, based primarily upon what they perceived as a lack of jurisdiction over this action due to the DTA. CR 26.

On June 29, 2006, the United States Supreme Court issued its decision in *Hamdan v. Rumsfeld*, 548 U.S. ___, 126 S. Ct. 2749 (2006) which Petitioner addressed, noting that because he filed his habeas petition in November 2005, prior to the passage of the Detainee Treatment Act ("DTA"), under *Hamdan*, the DTA does not apply to him. CR 27 (Reply to Motion Seeking Entry of Protective Order).

On July 7, 2006, Respondents filed a Notice, asserting that notwithstanding the statements of the Supreme Court in *Hamdan*, the Court still lacks jurisdiction over this Petition. CR 29 . They also assert that "a stay remains appropriate" while due process issues are pending in the appeals court. *Id*. at 3 n.3. Inexplicably, on the same date, Respondents filed a Motion For Procedures Relating to Review of Certain Detainee Materials because their agents seized legal materials from a number of detainees at Guantanamo. CR 28. While that motion was filed in Mr. Al-Asadi's case, it was subsequently withdrawn -- not because Respondents decided that this Court had no jurisdiction or because "a stay remains appropriate," but because nothing was taken from Mr. Al-

sadi.[1]  CR 30.  In the July 7, 2006 Notice, Respondents have not asked this Court to do anything but it indicates that they plan to persist in their unsupported jurisdictional arguments to wrongfully deny Mr. Al-Asadi visitation from appointed counsel.[2]  It is believed that the government has subjected detainees such as Mr. Al-Asadi to even more punishing prison conditions than usual in response to the suicides of three detainees at Guantanamo.  *See, e.g.*, "Hicks says Guantanamo conditions worse after detainee suicides," *Jurist Legal News & Research* (July 7, 2006) (reporting that Guantanamo detainee "told family members that conditions at the detention center have worsened in the wake of three detainee suicides"), attached as Exhibit A; "Calls to Close Guantánamo grow after suicides," Ass. Press (noting that guards "now give bedsheets to detainees only when they go to bed and remove them after they wake up in the morning"), attached as Exhibit B. According to the Associated Press, "[h]uman rights activists and defense attorneys said the deaths signaled the desperation of many of the 460 detainees held on suspicion of links to Al Qaeda and the Taliban." *Id.*[3]  To the extent that there may be truth to this allegation, it is even more imperative for counsel

---

[1]  Counsel for Respondents informed the undersigned that this was the reason for withdrawing the motion in Mr. Al-Asadi's case.  Such Motions for Procedures have not been withdrawn in other petitioners' cases where materials were seized from other detainees.

[2]  Counsel has gone to Yemen and met family members of Mr. Al-Asadi and has expended considerable resources in attempting to represent Mr. Al-Asadi, representation which Respondents continues to preclude.

[3]  Recent credible evidence not only confirms that "conditions at the detention center have worsened," *id.*, but according to a report of the United Nations Economic and Social Council distributed on February 15, 2006 ("02/15/06 U.N. Report"), attached as Exhibit C, the government has subjected detainees to severe suffering:

> On the interviews conducted with former detainees, the Special Rapporteur, concludes that some of the techniques, in particular the use of dogs, exposure to extreme temperatures, sleep deprivation for several consecutive days and prolonged isolation were perceived as causing severe suffering.

to meet with Mr. Al-Asadi to prevent punitive action being taken unnecessarily against him and to at least give him some hope that someone somewhere is representing his interests so that he will not become as despondent as the individuals who took their own lives.

Having asked this Court to take action in its July 7, 2006 Motion Seeking Procedures, even though the motion is now withdraw, Respondents themselves cannot be convinced that this Court lacks authority over this cause or that a stay of everything, including even client visits, is warranted. In any event, Respondents' Notice regarding jurisdiction is based upon a misreading of the DTA and of the Supreme Court's decision. The Supreme Court also held that, at a minimum, Common Article 3 of the Geneva Convention and the rules for courts-martial apply to Mr. Al-Asadi and both would

---

. . . .

> Whereas it is conceivable that in the beginning the conditions of detention put in place were determined for reasons of order and security, they then seem to have been used to "counter resistance" and to cause stress. Moreover, they were closely linked with investigation techniques. There is plentiful evidence indicating that policies aimed at forcing detainees to cooperate such as withholding of clothes or of hygienic products, permanent light in the cells, no talking, cultural and religious harassment, sensory deprivation, intimidation, and the deliberate uncertainty generated by the indeterminate nature of confinement and the denial of access to independent tribunals, were used and led to seriously mental health problems.

02/15/06 U.N. Report at 25-26 (internal formatting and footnotes omitted). The 02/15/06 U.N. Report also chronicles the government's excessive use of violence toward detainees, which "[t]he Special Rapporteur considers . . . amounts to torture," *id.* at 26, and discusses the "consistent reports about the practice of rendition and forcible return of Guantánamo detainees to countries where they are at serious risk of torture," *id.* at 26. Finally, the 02/15/06 U.N. Report concludes that "[i]nvestigations into allegations of torture . . . were conducted by different parts of the executive branch, and lacked impartiality." *Id.* at 27 (internal footnotes omitted).

afford him the right to counsel and to meet with counsel. For these reasons, he submits this Response to the July 7, 2006 Notice and he renews his prior request for entry of the Protective Order.

II.

**RESPONDENTS' CONTINUED RELIANCE UPON THE DTA FOR ITS JURISDICTIONAL ASSERTIONS IS MISPLACED AND THEY MISREAD *HAMDAN***

Presently, undersigned counsel have received security clearance and the only impediment to visiting Mr. Al-Asadi is that no protective order has been entered. Respondents previously opposed entry of the protective order claiming that the DTA withdrew jurisdiction from this Court and Mr. Al-Asadi has no right to counsel. Both of these grounds were addressed and eliminated in *Hamdan*. *See* 126 S. Ct. at 2769, n.15 (DTA does not apply to habeas petitions -- at least those seeking the broad relief sought here -- pending upon its enactment, thus there is district court jurisdiction over habeas petition); *see id*. at 2786, 2790-2791 (at least some protections of Geneva Conventions apply and court-martial rules apply).[4]

---

[4] Both the Geneva Convention and the Uniform Code of Military Justice ("UCMJ") provide for a right to counsel. *See* Geneva Convention (III) Relative to the Treatment of Prisoners of War, Aug. 12, 1949, [1955] 6 U.S.T. 3316, 3318, T.I.A.S. No. 3364, Article 3 (prohibiting "[t]he passing of sentences and the carrying out of executions without previous judgment pronounced by a regularly constituted court affording all the judicial guarantees which are recognized as indispensable by civilized peoples"); *id* at Article 98 ("No prisoner of war may be convicted without having had an opportunity to present his defence and the assistance of a qualified advocate or counsel");*id*. at Article 105 ("The prisoner of war shall be entitled to . . . defence by a qualified advocate or counsel of his own choice . . . "); *See* 10 U.S.C. §838(b)(1) ("The accused has the right to be represented in his defense before a special or general court-martial . . . .").

The Geneva Convention also provides that "[counsel for prisoners of war] may, in particular, freely visit the accused and interview him in private." Geneva Convention (III) Relative to the Treatment of Prisoners of War, Aug. 12, 1949, [1955] 6 U.S.T. 3316, 3318, T.I.A.S. No. 3364, Article 105. As noted in *Hamdan*, "[t]he President has stated that the conflict with the Taliban is a conflict to which the Geneva Conventions apply." 126 S. Ct. at 2795, n.60 (citing White House Memorandum, Humane Treatment of Taliban and al Quaeda Detainees 2 (Feb. 7, 2002), available at http:/www.justicescholars.org/pegc/archive/White_House/bush_memo_20020207_edf.pdf)). 126

Respondents previously argued that section 1005(e)(1) of the DTA which provides that no court shall have jurisdiction to consider "an application for a writ of habeas corpus filed by or on behalf of an alien detained by the Department of Defense at Guantanamo Bay, Cuba" applies to pending *habeas* petitions divesting this Court of jurisdiction over all Guantánamo cases. CR 29.

In *Hamdan*, the Court conclusively determined that the DTA did not strip the courts of jurisdiction over petitions for *habeas corpus* pending at the time the DTA was enacted. 126 S. Ct. at 2769 n. 15. The Court denied the government's subject matter jurisdictional challenge to federal courts' authority over Mr. Hamdan's *habeas* petition wherein he challenged the Executive's authority to prosecute and punish him and the procedures employed by the Executive, specifically, the proposed military commissions. *Id.*; *see also id*. at 2759. The Supreme Court rejected this section

---

S. Ct. at 2795 n.60.

Since Mr. Al-Asadi is a citizen of Yemen and Yemen is a signatory to the Geneva Convention, *Hamdan* suggests that the Conventions do apply. 126 S. Ct. at 2795(noting that as for signatories to the Conventions, such as Afghanistan, the argument Respondents made in *Hamdan*, that the Geneva Convention did not apply lacks force).

The focus of *Hamdan* is Article 3 of the Geneva Convention but there are numerous references to and assumptions that the other articles may apply as well. *See* 126 S. Ct at 2793 (rejecting court of appeals' conclusion that Hamdan is not entitled to the **protections** (plural not singular) of the Geneva Convention without limiting such protections to only Article 3); *id*. at 2795, n.61 (acknowledging *Hamdan*'s contention that Article 5 of the Geneva Convention confers prisoner-of-war status upon him and refraining from deciding the issue -- not because Article 5 does not apply or because only Article 3 applies, but, rather because the military tribunal convened to try Hamdan was illegitimate whether or not he was a "prisoner of war"); *but see id*. at 2795 (not reaching the question of whether the Geneva Convention in *toto* applies because at a minimum, Article 3 applies).

Finally, in *Hamdi v. Rumsfeld*, 542 U.S. 507 (2004), the Court assumed that the Geneva Convention applied when it cited Article 118 of the Geneva Code to set forth as part of its holding the proposition that "detention may last no longer than active hostilities." *Id* at 520-521 (citing Article 118 of the Geneva Convention (III) Relative to the Treatment of Prisoners of War, Aug. 12, 1949, [1955] 6 U.S.T. 3316, 3406, T.I.A.S. No. 3364 ("Prisoners of war shall be released and repatriated without delay after the cessation of active hostilities")).

6

1005(e)(1) argument after reviewing the statutory text and legislative history. It held that "§1005(e)(1) does not strip federal courts' jurisdiction over cases pending on the date of the DTA's enactment." 126 S. Ct. at 2769 n.15.  Because *Hamdan* involved a *habeas* petition that was pending at the time of the enactment of the DTA, the exercise of jurisdiction was appropriate.

The Court decided this issue as a matter of statutory interpretation because Congress had not expressly stated that section 1005(e)(1) was to be applied retroactively to pending cases while it had so stated regarding sections 1005(e)(2) and 1005(e)(3). *See id.* at 2764 (drawing a negative inference from the absence of the language dictating retroactive application in section 1005(e)(1)) (citing *Lindh v. Murphy*, 521 U.S. 320, 326 (1997).

After having lost the section 1005(e)(1) argument, Respondents now claim that sections 1005(e)(2) and 1005(e)(3) divest this Court of jurisdiction, ignoring the fact that these provisions did not operate as a jurisdictional bar to preclude Mr. Hamdan's habeas petition.  *See* 126 S. Ct. Section 1005(e)(2) vests in the D.C. Circuit the "exclusive jurisdiction to determine the validity of any final decision of a [CSRT] that an alien is properly designated as an enemy combatant."  DTA §1005(e)(2).  Section 1005(e)(3) vests in the D. C. Circuit "exclusive jurisdiction to determine the validity of any final decision rendered pursuant to Military Commission Order No. 1, dated August 31, 2005 (or any successor military order)." DTA § 1005(e)(3)(A).  While the Court did not answer the question of whether or not "habeas cases pending in the lower courts at the time the DTA was enacted that do qualify as challenges to 'final decision[s] within the meaning of subsection(e)(2) or (e)(3)" should be transferred to the District of Colombia Court of Appeals under these two subsections, *see Hamdan*, 126 S. Ct. at 2770 n.14, it concluded that because Hamdan was "not contesting any 'final decision' of a CSRT or military commission, his action does not fall within the

scope of subsection (e)(2) or (e)(3)." *Id.* Significantly, it noted that it is section 1005(e)(1) -- which is not to be applied to pending petitions -- that "addresses jurisdiction in habeas cases and other actions "relating to any aspect of the detention," *Id*. at 2767.[5]

Mr. Al-Asadi's habeas corpus petition is not a challenge to the final decision of a CSRT. He asserts numerous causes of action, challenging his unlawful detention and conditions of his confinement under the Fifth Amendment and the Eighth Amendment, he asserts common law due process doctrines, and he invokes the Geneva Convention, the Uniform Code of Military Justice and the Alien Tort Statute. *See* CR 1 at 17-28. He alleges that the Executive's conduct and policies exceed the bounds of Article II of the Constitution, CR 1 at 24, and he seeks declaratory and injunctive relief in addition to relief from unlawful detention -- *habeas corpus* – the remedy that permits him to demand either release to freedom or legal justification for imprisonment.[6] In doing so he denies the legitimacy of the CSRTs and the procedures and processes under which he is presently detained. For example, his Petition alleges, among other things, that: (1) Petitioners are not properly detained subject to President Bush's authority as Commander-in-Chief, under the laws and usages of war, or Joint Resolution 23, Authorization for Use of Military Force, Pub. L. No. 107-40, 115 Stat. 224 (Sept. 18, 2001) ("AUMF"); (2) the executive order issued by President Bush, 66

---

[5] The Court recognized but did not reach the difficult constitutional and statutory questions posed by an interpretation of the DTA which would suspend the writ of habeas corpus, no less suspend it retroactively, nor did it address the doctrine of constitutional doubt which counsels against construing the DTA in a manner which would raise such serious constitutional questions. *See id*. at 2769 n.15. It did note and recognize each of these significant arguments raised by *Hamdan*. *Id*.; *see also id*. at 2763-64.

[6] This is the remedy which the Court has repeatedly recognized applies here. *See, e.g., Hamdi v. Rumsfeld*, 542 U.S. 507 (2004) (recognizing that habeas was proper vehicle to challenge indefinite detention -- both for aliens and citizens)*; Rasul v. Bush*, 542 U.S. 466 (2004) (allowing habeas petitions filed by aliens at Guantanamo).

Fed. Reg. 57,833 § 2 (Nov. 13, 2001), was not authorized by Congress and is beyond the scope of the Joint Resolution; (3) Petitioners have been denied the process due to them under the common law and the Due Process Clause of the Fifth Amendment, domestic civil and military law, and international law; (4) the conditions of confinement at Guantánamo violate the Constitution, the regulations of the United States Military, the Geneva Convention, the International Convention on Civil and Political Rights, the American Declaration on the Rights and Duties of Man, the 1954 Convention Relating to the Status of Refugees and customary international law; and (5) Petitioners are at risk of being rendered without lawful procedures to a country that engages in torture during interrogations and incarceration. Accordingly, Respondents' attempt to recast Petitioner's action as nothing more than a challenge to the validity of the CSRT decisions must fail once the actual habeas petition is reviewed.

As noted in Petitioner's supplemental filing, subsequent to *Hamdan,* courts have recognized their authority to exercise jurisdiction over the Guantánamo *habeas* cases. *See, e.g., Al Darby v. Bush,* Case No. 05-2371 (RCL) (July 3, 2006 Order entering the Protective Order); *Hamoud v. Bush,* (July 5, 2006, Order concluding that "the [*Hamdan*] Court made clear that this court retains jurisdiction over this *habeas corpus* petition."[7]

Clearly, under *Hamdan*, this Court has jurisdiction over Mr. Al-Asadi's habeas petition wherein he challenges his detention, among other things relating to his detention, which was pending when the DTA was enacted hence. *See id.*.

---

[7] As Petitioner noted in his Supplemental Authority, even before *Hamdan* was decided, a number of district court judges rejected the assertion that the DTA precluded entry of the protective order. *See* CR 30 at 5 n.3 .

Moreover, Respondents appear to have recognized the continued authority of this Court to exercise its jurisdiction over these matters. On the same day Respondents filed their Notice, they filed in this case and others the now-withdrawn Motion for Procedures Relating to Review of Certain Detainee Materials. Respondents cannot have it both ways: requesting the assistance of this Court when it suits their needs when it has previously denied the authority of the Court to act on any request for relief filed by Petitioners. *See New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (principles of judicial estoppel prevents parties from taking one legal position when it suits their interests and altering that legal position when their interests change) (citing 18 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, FEDERAL PRACTICE & PROCEDURE §4477 p. 782 (1981) ("absent any good explanation, a party should not be allowed to gain an advantage by litigation on one theory and then seek an inconsistent advantage by litigation on an incompatible theory").

## III.

## THE PROTECTIVE ORDER SHOULD BE ENTERED.

In *Rasul v. Bush*, 542 U.S. 466 (2004), the Supreme Court unequivocally held that "§2241 confers on the District Court jurisdiction to hear petitioners' habeas corpus challenges to the legality of their detention at the Guantanamo Bay Naval Base" *Id*. at 484. In *Hamdan*, the Supreme Court affirmed this principle -- at least as applied to petitions such as Mr. Al-Asadi's pending on the date the DTA was enacted. 126 S. Ct. at 2769 n.15. As Respondents have themselves recognized, Petitioner is not versed in either the language or the laws of this land. *See* CR 2 at 4, n.8. The exercise of that right is meaningless if a petitioner is denied the ability to communicate with his attorneys. *See Chandler v. Fretag*, 348 U.S. 3, 10 (1954) ("a defendant must be given a reasonable opportunity to employ and consult with counsel; otherwise, the right to be heard by counsel would

be of little worth"); *see also Hamdi v. Rumsfeld*, 542 U.S. 507, 539 (2004) (in context of habeas challenge, mandating that petitioner have access to counsel in order to ensure meaningful notice and opportunity to respond to allegations surrounding his detention).

Because no Protective Order has been entered, Mr. Al-Asadi has been denied access to his attorneys.[8] Indeed, we are unable to even confirm that he is aware that an amended Petition for *habeas corpus* was filed on his behalf.

Respondents' continued efforts to deny Petitioner access to counsel should be rejected. As noted above, there is no merit to Respondents' argument that, notwithstanding *Hamdan*, entry of the Protective Order is precluded by the DTA. This Court has the authority to enter the Protective Order, and there is no justification for further delay of the entry of that order while jurisdictional arguments are litigated at every level of the federal court system (including, possibly, yet another appeal to the United States Supreme Court). In *Hamdan*, the Supreme Court recognized that at a minimum, the protections contained in Common Article 3 of the Geneva Convention apply which would include judgments pronounced by a "regularly constituted court affording all the judicial guarantees which are recognized as indispensable by civilized peoples." *Geneva Convention*, 1949 Protocol, Art. 3.

---

[8] *Hamdi* expressly addressed the rights attendant to the citizen challenging the lawfulness of his detention and found a citizen entitled to a due process rather than a statutory basis for allowing his habeas challenge, 542 U.S. at 532-33, while *Rasul* held that aliens detained on land controlled exclusively by the United States, had a statutory right to bring such a challenge. 542 U.S. at 484. While *Hamdi's* decision that habeas review was required for citizens was constitutional, the mandate that petitioner be provided access to counsel was not constitutionally grounded as there is not right to counsel in habeas proceedings. But as with Mr. Al-Asadi, Mr. Hamdi had appointed counsel and the government denied him access to appointed counsel who were willing to meet with Mr. Hamdi.. The Supreme Court stated that Mr. Hamdi "unquestionably has the **right to access to counsel** in connection with the proceedings on remand." *Id*. at 539 (emphasis supplied). Similarly, Mr. Al-Asadi, who has appointed counsel, who are willing to meet with him, should not be denied **access** to counsel. *See id*.

According to *Hamdan*, the phrase "regularly constituted court," is not defined in the text of the Geneva Conventions but "it must be understood to incorporate at least the barest of those trial protections that have been recognized by customary international law. Many of these are described in Article 75 of Protocol I to the Geneva Conventions of 1949, adopted in 1977 (Protocol I)." 126 S. Ct. at 2797. Article 75 provides that the accused "shall have all necessary rights and means of defence"[9] Geneva Convention Protocol I, Art. 75(4)(a).

In *Hamdan*, the Supreme Court found that the right to cross-examine was such a fundamental judicial guarantee, 126 S. Ct. at 2798 n.67 -- the right to counsel which derives from the same constitutional amendment appears no less fundamental -- maybe more so in light of precedent on this subject. *See Gideon v. Wainwright*, 372 U.S. 335 (1963) (right to counsel is structural). The Supreme Court defined "a regularly-constituted court" as one which, at a minimum, complies with the rules governing court-martials. 126 S. Ct. at 2797. The rules governing courts-martial, contained in the Uniform Code of Military Justice recognize the right to defense counsel, UCMJ §827, Art. 27(a)(1) ("defense counsel shall be detailed for each general and special court-martial"); *id.* at Art. 27(c)(1) ("the accused shall be afforded the opportunity to be represented at the trial by counsel...."); *see also* 10 U.S.C. §836(a) (requiring that "the rules that the President promulgates for courts-martial, provost courts and military commissions alike conform to those that govern procedures in Article III courts" so far as the President determines is practicable). The President has nowhere

---

[9] According to Article 75, Mr. Al-Asadi is either an "accused" who obtains the "necessary rights and means of defence" and the presumption of innocence or he is just a person detained who "shall be released with the minimum delay possible and in any event as soon as the circumstances justifying the arrest, detention or internment have ceased to exist." Geneva Convention Protocol I, Art. 75(3), (4)(a). Since no efforts have been made to release Mr. Al-Asadi, presumably, he is an "accused."

declared that access to counsel is "impracticable."  According to *Hamdi, Rasul* and *Hamdan*, Mr. Al-Asadi should not be denied access to his appointed defense counsel.

In *Hamdan*, the Supreme Court held: "in undertaking to try Hamdan and subject him to criminal punishment, the Executive is bound to comply with the Rule of Law that prevails in this jurisdiction."  126 S. Ct. at 2798.  Mr. Al-Asadi seeks this same protection from this Court.  Based upon the foregoing, Respondents' assertion that this Court lack jurisdiction over this matter should be rejected and the protective order should be entered so that the Rule of Law which permits consultation with appointed counsel can be complied with.

Dated:  August 8, 2006                                  Respectfully submitted,


/s/_____
**SHEREEN J. CHARLICK (CA 147533)**
Federal Defenders
225 Broadway, Suite 900
San Diego, CA 92101-5030
(619) 685-3719

<b>CERTIFICATE OF SERVICE</b>

I, Shereen J. Charlick, hereby certify that I today caused a true and accurate copy of the foregoing to be served upon the following persons, by first-class United States mail, in addition to the service that automatically occurs by virtue of my electronic filing of this document:

The Honorable Alberto Gonzales
United States Attorney General
United States Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530-0001

The Honorable Kenneth L. Wainstein
United States Attorney for the District of Columbia
555 4th Street, N.W.
Washington, D.C. 20530

Terry Marcus Henry, Esq., Senior Trial Attorney
U.S. Department of Justice
P.O. Box 883
20 Massachusetts Ave., NW, Suite 7144
Washington, DC 20044


August 8, 2006

    /s/_____
SHEREEN J. CHARLICK
Counsel for Petitioner