IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| MOHAMMED AHMED ALI AL-ASADI, et al., | ) ) ) | |
| Petitioners, | ) ) | |
| v. | ) ) | Civil Action No. 05-CV-2197 (HHK) |
| GEORGE W. BUSH, President of the United States, et al., | ) ) ) ) | |
| Respondents. | ) ) ) | |

**RESPONDENTS' OPPOSITION TO PETITIONER'S MOTION TO LIFT STAY**

Respondents hereby oppose petitioner's Motion to Lift Stay ("Motion") (dkt. no. 33). As explained below, this motion disregards the reasons supporting a continued stay of proceedings in this case. Petitioner's motion, therefore, is inappropriate and should be denied.

**ARGUMENT**

**A.  The Court Should Deny Petitioner's Motion Because the Detainee Treatment Act of 2005 Granted the D.C. Circuit Exclusive Jurisdiction Over this Action.**

Petitioner claims in his motion that in light of the Supreme Court's decision in Hamdan v. Rumsfeld, 548 U.S. __, 126 S. Ct. 2749 (U.S. June 29, 2006), the Court should lift its stay and proceed directly to consider the merits of his petition. Motion at 2, 3, 5; see Order, No. 05-CV-2197 (HHK) (March 16, 2006) (dkt. no. 20). A correct reading of Hamdan, however, makes clear that such action is not appropriate. Indeed, the Detainee Treatment Act of 2005, Pub. L. No. 109-148, tit. X, 119 Stat. 2680 ("the Act"), vests exclusive jurisdiction over this action in the D.C. Circuit. The Act, among other things, not only amends 28 U.S.C. § 2241 to eliminate court jurisdiction to consider habeas petitions and other claims by aliens held as enemy combatants at

Guantanamo Bay, id., § 1005(e)(1), it also creates an exclusive review mechanism in the D.C.
Circuit to address the validity of the detention of such aliens and final decisions of any military
commissions, id., § 1005(e)(1), (e)(2), (e)(3).  Section 1005(e)(2) of the Act states that the D.C.
Circuit "shall have exclusive jurisdiction to determine the validity of any final decision of a
Combatant Status Review Tribunal that an alien is properly detained as an enemy combatant,"
and it further specifies the scope and intensiveness of that review.  While the Supreme Court in
Hamdan held that § 1005(e)(1) of the Detainee Treatment Act did not apply to habeas petitions
pending prior to the enactment of the Act, it recognized that the exclusive review provisions of
the Act did expressly apply to cases pending prior to enactment.  See 126 S. Ct. at 2762-69.
Although the petitioner in Hamdan escaped the Act because his challenge did not involve a final
decision of a military commission within the exclusive jurisdiction of the Court of Appeals under
§ 1005(e)(3), the Court reserved the question of the effect of the exclusive review provisions of
the Act on other cases, stating that "[t]here may be habeas cases that were pending in the lower
courts at the time the DTA was enacted that do qualify as challenges to 'final decision[s]' within
the meaning of subsection (e)(2) or (e)(3).  We express no view about whether the DTA would
require transfer of such an action to the District of Columbia Circuit."  126 S. Ct. at 2769 n.14.

 The instant case is such an action, i.e., challenging petitioner's designation as an enemy
combatant through the Combatant Status Review Tribunal ("CSRT"), and given the Act's
investment of exclusive review in the Court of Appeals, the District Court lacks jurisdiction over
this case for it is well-settled that an exclusive-review scheme, where applicable, precludes the
exercise of jurisdiction under more general grants of jurisdiction, including habeas corpus.  Cf.,
e.g., 5 U.S.C. § 703 ("form of proceeding for judicial review is the special statutory review

proceeding relevant to the subject matter in a court specified by statute or, in the absence or

inadequacy thereof, any applicable form of legal action, including actions for . . . writs of . . .

habeas corpus"); Thunder Basin Coal Co. v. Reich, 510 U.S. 200, 207-09 (1994) ("exclusive"

jurisdiction under federal Mine Act precludes assertion of district court jurisdiction); FCC v. ITT

World Communications, Inc., 466 U.S. 463, 468 (1984) (Hobbs Act) ("The appropriate

procedure for obtaining judicial review of the agency's disposition of these issues was appeal to

the Court of Appeals as provided by statute."); Laing v. Ashcroft, 370 F.3d 994, 999-1000 (9th

Cir. 2004) ("§ 2241 is ordinarily reserved for instances in which no other judicial remedy is

available"); Lopez v. Heinauer, 332 F.3d 507, 511 (8th Cir. 2003) ("Because judicial review was

available . . . the district court was not authorized to hear this § 2241 habeas petition.").  See also

Telecommunications Research and Action Center v. FCC, 750 F.2d 70, 77 (D.C. Cir. 1984)

("even where Congress has not expressly stated that statutory jurisdiction is 'exclusive' . . . a

statute which vests jurisdiction in a particular court cuts off original jurisdiction in other courts

in all cases covered by that statute") (footnote omitted); id. at 75, 78-79 (request for relief in

district court that might affect Court of Appeals' future, exclusive jurisdiction is subject to the

exclusive review of the Court of Appeals).

        Petitioner's apparent contention that section 1005(e)(2) of the Act, which creates an

exclusive review mechanism in the D.C. Circuit for the CSRT's enemy combatant

determinations, does not apply to his claims is unfounded.  Petitioner asserts that his "habeas

corpus petition is not a challenge to the final decision of a CSRT" but more broadly challenges,

inter alia, his "unlawful detention."  Id. at 4.  However, petitioner has been determined, in a final

decision of a CSRT, to be an enemy combatant.  See Respondents' Memorandum in Opposition

to Petitioners' Motion Seeking Entry of Protective Order or Status Conference at 3 ("Resp. Memo.") (dkt. no. 26) (petitioner is an "enemy combatant"); <u>see also</u> Defense Department Special Briefing on Combatant Status Review Tribunals (March 29, 2005) ("Combatant Status Review Tribunals for <u>all</u> of the DOD detainees at Guantanamo" were completed in March 2005) (emphasis added) (available at: http://www.defenselink.mil/transcripts/2005/ tr20050329-2382.html).  Therefore, petitioner, in challenging the lawfulness of his detention as an enemy combatant, is necessarily challenging the "validity" of the final CSRT decision that he "is properly detained as an enemy combatant."  Act, § 1005(e)(2)(A).  Petitioner's claims thus fall squarely within the substantive scope of section 1005(e)(2) of the Act.[1]

Indeed, petitioner's motion makes clear that his case involves a challenge to the CSRT's determination that he is an enemy combatant because a significant portion of his motion is devoted to a discussion of what he perceives as the illegitimacy of the CSRT's decision and defects of the standards used by the CSRT.  <u>See</u>, <u>e.g.</u>, Motion at 4 ("[H]e denies the legitimacy of the CSRTS and the procedures and processes under which he is presently detained."); <u>id.</u> ("He alleges that the Executive's conduct and policies exceed the bounds of Article II of the Constitution").  In these ways, petitioner's case can be characterized as nothing other than a challenge to the CSRT's designation of petitioner as an enemy combatant.

Further, petitioner's reliance on this Court's Order lifting the stay in <u>Zakirjan</u> is misplaced because <u>Zakirjan</u> is clearly distinguishable from the instant case.  <u>See</u> Motion at 4

---

[1] Section 1005(e)(2) permits review of constitutional and statutory challenges related to the detention determination.  <u>See</u> Act, § 1005(e)(2)(C) ("to the extent the Constitution and laws of the United States are applicable, [the Court of Appeals will review] whether the use of such standards and procedures to make the determination is consistent with the Constitution and laws of the United States").

(citing Order, <u>Zakirjan v. Bush, et al.</u>, No. 05-CV-2053 (HHK) (August 18, 2006) (dkt. no. 61)).

In <u>Zakirjan</u>, petitioner was determined by his CSRT to be no longer classified as an enemy

combatant.  <u>See</u> Respondents' Memorandum in Opposition to Petitioner's Motions for

Temporary Restraining Order and Preliminary Injunction Barring Transfer or Release or

Requiring Advance Notice of Transfer or Release at 3, <u>Zakirjan</u>, No. 05-CV-2053 (HHK) (dkt.

no. 9).  Because Zakirjan has been determined by a CSRT not to be an enemy combatant, he

does not challenge any final CSRT decision.  <u>See</u> Reply Brief for Appellants and Brief for Cross-

Appellees at 6, <u>Kiyemba v. Bush, et al.</u>, (Nos. 05-5487, <u>et al.</u>) (attached as Exhibit A).  As a

result, the D.C. Circuit's "exclusive" jurisdiction under section 1005(e)(2) of the Act is

inapplicable.  <u>Id.</u>  Considerations related to the Act, therefore, did not warrant continuation of the

stay in <u>Zakirjan</u>.  In this case, by contrast, this Court, pursuant to section 1005(e)(2) of the Act,

does not have jurisdiction to lift the stay because, as explained <u>supra</u>, petitioner is challenging

his CSRT's determination that he is an enemy combatant.  <u>See</u> Resp. Memo. at 3.

      Granting the relief petitioner requests would be an assertion of jurisdiction and authority

in this case inconsistent with the Act's investment of exclusive jurisdiction in the Court of

Appeals, and respondents' argument in this regard is in no way immaterial or premature.  <u>See</u>

<u>Steel Co. v. Citizens for a Better Env't</u>, 523 U.S. 83, 94 (1998) ("Without jurisdiction [a] court

cannot proceed at all in any cause."); <u>see also</u> <u>Ex parte McCardle</u>, 74 U.S. (7 Wall.) 506, 514

(1869) ("Jurisdiction is power to declare the law, and when it ceases to exist, the only function

remaining to the court is that of announcing the fact and dismissing the cause.").

      The issue of the effect of the Act on cases such as this remains pending before the Court

of Appeals, and the impact of the Supreme Court's recent decision in <u>Hamdan</u> on that issue is the

subject of supplemental briefing in the Court of Appeals that was completed on August 15, 2006.

Accordingly, petitioner's Motion to Lift Stay should be denied.

**B.    The Court Should Deny Petitioner's Motion Because Circumstances Otherwise Warrant Maintaining the Stay.**

Petitioner's motion also should be denied because petitioner has failed to provide a

sufficient factual or legal basis to justify lifting the stay in this case.  See Order, No. 05-CV-2197

(HHK) (March 16, 2006) (dkt. no. 20) at 3.  On March 16, 2006, this Court stayed "all action" in

this case pending the resolution by the Supreme Court or D.C. Circuit of "serious questions

concerning whether this Court retains jurisdiction to hear the above-captioned case[]" after the

Detainee Treatment Act of 2005 became law.  Id.  Since this jurisdictional issue has not been

resolved, the stay is still in effect.  Petitioner's counsel makes no showing of any circumstances

that would in any way warrant lifting the stay, even if such action was appropriate despite the

pending appellate proceedings.

Indeed, while Hamdan addressed one aspect of the Detainee Treatment Act, it did not

resolve the effect of the exclusive jurisdiction provision of the Act as it applies to cases like this

one, nor did it resolve the multiple, significant issues regarding how Guantanamo detainees'

challenges to their detention should proceed.  For example, the Court of Appeals will determine

the rights available, if any, to detainees at Guantanamo under the Fifth Amendment and various

statutes and treaties.  In light of the potential for the D.C. Circuit's ruling to moot or at least

significantly impact the legal bases for and future proceedings on petitioner's habeas petition and

the likelihood that any substantive proceedings undertaken in this case would have to be

relitigated or revisited once the Court of Appeals provides its guidance, this Court should deny

petitioner's motion to lift the stay pending resolution of the pending appeals.

Further, granting petitioner's motion would potentially have far-reaching consequences because such an order doubtless would trigger a cascade effect in other Guantanamo detainee cases.  Presently, there are approximately 200 habeas cases pending on behalf of well over 300 detainees at Guantanamo; the majority of those cases and petitioners were not subject to the decisions of Judges Leon and Green in <u>Khalid</u> and <u>In re Guantanamo</u>.  A decision to lift the stay before the resolution of the appeals could precipitate a chain reaction – the scores of petitioners in other pending Guantanamo enemy combatant detainee habeas cases, seeking parity of treatment, would request the Court to lift or modify stays that have already been entered.  This scenario is exactly what Judge Green aimed to avoid when she denied the motion of petitioners in the coordinated Guantanamo cases to reconsider her order granting a stay pending appeal "in light of the substantial resources that would be expended and the significant burdens that would be incurred should this litigation go forward."  <u>See</u> Order Denying Motion for Reconsideration of Order Granting Stay Pending Appeal in <u>In re Guantanamo Detainee Cases</u> (Feb. 7, 2005) (Green, J.).  For all of these reasons, the Court should deny petitioner's motion.

## <u>CONCLUSION</u>

For the foregoing reasons, petitioner's Motion to Lift Stay should be denied.

Dated: September 7, 2006                    Respectfully submitted,

                                           PETER D. KEISLER
                                           Assistant Attorney General

                                           DOUGLAS N. LETTER
                                           Terrorism Litigation Counsel


                                            /s/ Nicholas J. Patterson
                                           JOSEPH H. HUNT (D.C. Bar No. 431134)
                                           VINCENT M. GARVEY (D.C. Bar No. 127191)
                                           TERRY M. HENRY
                                           EDWARD H. WHITE
                                           JAMES J. SCHWARTZ
                                           PREEYA M. NORONHA
                                           ROBERT J. KATERBERG
                                           ANDREW I. WARDEN
                                           NICHOLAS J. PATTERSON
                                           Attorneys
                                           United States Department of Justice
                                           Civil Division, Federal Programs Branch
                                           20 Massachusetts Ave., N.W.  Room 7220
                                           Washington, DC  20530
                                           Tel: (202) 514-4523
                                           Fax: (202) 616-8470
                                           E-mail: nicholas.patterson@usdoj.gov

                                           Attorneys for Respondents