# EXHIBIT A

[ORAL ARGUMENT SCHEDULED FOR SEPTEMBER 11, 2006]

Nos. 05-5487, 05-5488, 05-5489, 05-5490, 05-5491, 05-5492, and 06-5042

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

JAMAL KIYEMBA, Next Friend, et al.,
Appellees/Cross-Appellants,
v.
GEORGE W. BUSH, President of the United States, et al.,
Appellants/Cross-Appellees.

EDHAM MAMET, Detainee, et al.,
Appellees/Cross-Appellants,
v.
GEORGE W. BUSH, President of the United States, et al.,
Appellants/Cross-Appellees.

ALLADEEN & SHERIF EL-MASHAD, Detainees, et al.,
Appellees,
v.
GEORGE W. BUSH, President of the United States, et al.,
Appellants.

ZAKIRJAN, Detainee,
Appellee,
v.
GEORGE W. BUSH, President of the United States, et al.,
Appellants.

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

### REPLY BRIEF FOR APPELLANTS AND
### BRIEF FOR CROSS-APPELLEES

PETER D. KEISLER
*Assistant Attorney General*

GREGORY G. KATSAS
*Deputy Assistant Attorney General*

DOUGLAS N. LETTER
(202) 514-3602
ROBERT M. LOEB
(202) 514-4332
CATHERINE Y. HANCOCK
(202) 514-3469
*Attorneys, Appellate Staff*
*Civil Division, Room 7268*
*U.S. Department of Justice*
*950 Pennsylvania Ave., N.W.*
*Washington, D.C. 20530-0001*

# CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

## A.    Parties and Amici

All parties and amici appearing before the district court and in this Court are listed in the Brief for Appellants, except for the parties in El-Mashad v. Bush (No. 05-5492), which this Court sua sponte ordered consolidated with this case on July 7, 2006, after the Brief for Appellants had been filed.  In El-Mashad v. Bush, the petitioners before the district court were Sherif El-Mashad, Waffa El-Arabie (as his next friend), Adel Fattouh Aly Ahmed Algazzar, Fattouh Aly Ahmed Algazzar (as his next friend), and Omar Deghayes (as next friend of Alladeen).  Alladeen is the appellee in this Court.  Respondents in the district court and appellants in this Court are George W. Bush; Donald H. Rumsfeld, Secretary of Defense; Brigadier General Jay Hood, Commander, Joint Task Force, Guantanamo Bay, Cuba; and Colonel Nelson J. Cannon, Commander, Camp Delta, Guantanamo Bay, Cuba.  There were no amici in the district court or in this Court.

## B.    Rulings Under Review

All of the rulings under review are listed in the Brief for Appellants and in the Brief for Appellees/Cross-Appellants.  The ruling under review in El-Mashad (No. 05-5492) is the same ruling under review in Alladeen (No. 05-5491): the Order of October 27, 2005 (Robertson, J.) entered in Alladeen, App. 75-76.  See App. 95-96 & n.1 (explaining that notice of appeal, appealing from October 27, 2005 order, was

filed in both cases "out of an abundance of caution" due to confusion over whether Alladeen's claims would be litigated in El-Mashad or in Alladeen).

## C.    Related Cases

All related cases of which appellants/cross-appellees are aware are listed in the Brief for Appellants.  Hamdan v. Rumsfeld, 126 S. Ct. 2749 (2006), however, is no longer pending, but has been decided.

In addition, since the filing of our opening brief, the Government has filed appeals from other, similar district court orders that restrict the Government's ability to transfer or remove detainees from Guantanamo Bay, Cuba, in the following cases: Gul v. Bush (No. 06-5196), Shaaban v. Bush (No. 06-5197), Ghalib v. Bush (No. 06-5198), and Al Salami v. Bush (No. _____ [Dist. Ct. No. 05-CV-2452]).  There is also a pending appeal challenging a district court order denying such a restriction: Al Ginco v. Bush (No. 06-5191).


Catherine Y. Hancock

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

GLOSSARY  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vii

INTRODUCTION AND SUMMARY  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

I.    THE DETAINEE TREATMENT ACT PRECLUDES THE DISTRICT
      COURTS' CONTINUING JURISDICTION OVER THE ENEMY
      COMBATANT PETITIONERS' HABEAS CLAIMS IN KIYEMBA
      AND MAMET. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

II.   IF THIS COURT DOES NOT SET ASIDE THE DISTRICT COURTS'
      PROSPECTIVE INJUNCTIONS AS PRECLUDED BY THIS
      COURT'S EXCLUSIVE JURISDICTION, THE ORDERS SHOULD
      NEVERTHELESS BE REVERSED. . . . . . . . . . . . . . . . . . . . . . . . . 12

      A.    Court Supervision Of The President's Discretionary Decision To
            Release Guantanamo Detainees Encroaches Upon The Exercise
            Of His Constitutional Powers. . . . . . . . . . . . . . . . . . . . . . . . . . 12

      B.    The District Courts Abused Their Discretion In Issuing
            Preliminary Injunctions Restricting The Government's Ability To
            Release Or Transfer Detainees. . . . . . . . . . . . . . . . . . . . . . . . 16

      C.    The All Writs Act Does Not Authorize Preliminary Injunctive
            Relief Here. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

III.  THE DISTRICT COURTS DID NOT ABUSE THEIR DISCRETION
      IN STAYING THE CASES IN KIYEMBA AND MAMET PENDING
      THIS COURT'S RESOLUTION OF THE EARLIER GUANTANAMO
      DETAINEE APPEALS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

CERTIFICATE OF COMPLIANCE WITH RULE 32(a)(7)(C)
OF THE FEDERAL RULES OF APPELLATE PROCEDURE

CERTIFICATE OF SERVICE

## TABLE OF AUTHORITIES

**Page**

<u>Cases</u>:

<u>32 County Sovereignty Comm.</u> v. <u>Dep't of State</u>, 292 F.3d 797
(D.C. Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

<u>Anyanwutaku</u> v. <u>Moore</u>, 151 F.3d 1053 (D.C. Cir. 1998) . . . . . . . . . . . . . . . . . 20

<u>Arnbjornsdottir-Mendler</u> v. <u>United States</u>, 721 F.2d 679 (9th Cir. 1983) . . . . . . 16

<u>Chatman-Bey</u> v. <u>Thornburgh</u>, 864 F.2d 804 (D.C. Cir. 1988) . . . . . . . . . . . . . . 32

<u>Cheney</u> v. <u>United States Dist. Court for the Dist. of Columbia</u>,
542 U.S. 367 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35, 36

<u>Chong</u> v. <u>District Director, I.N.S.</u>, 264 F.3d 378 (3d Cir. 2001) . . . . . . . . . . . . . 21

<u>Clinton</u> v. <u>Jones</u>, 520 U.S. 681 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

<u>Cuomo</u> v. <u>U.S. Nuclear Regulatory Comm'n</u>, 772 F.2d 972
(D.C. Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

<u>DaimlerChrysler Corp.</u> v. <u>Cuno</u>, 126 S. Ct. 1854 (2006) . . . . . . . . . . . . . . . . . . 12

<u>Dalton</u> v. <u>Specter</u>, 511 U.S. 462 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 25

<u>Dellinger</u> v. <u>Mitchell</u>, 442 F.2d 782 (D.C. Cir. 1971) . . . . . . . . . . . . . . . . . . . . . 29

<u>Ex parte Fahey</u>, 332 U.S. 258 (1947) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

<u>Ex parte Quirin</u>, 317 U.S. 1 (1942) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

<u>Franklin</u> v. <u>Massachusetts</u>, 505 U.S. 788 (1992) . . . . . . . . . . . . . . . . . . . . . . . . 15

* Authorities upon which we chiefly rely are marked with an asterisk.

iii

*Gulfstream Aerospace Corp. v. Mayacamas Corp.,
    485 U.S. 271 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29, 35, 36

*Hamdan v. Rumsfeld, 126 S. Ct. 2749 (2006) . . . . . . . . . . . . . . . . . . . 2, 6-9, 14

*Hamdi v. Rumsfeld, 542 U.S. 507 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

In re Tennant, 359 F.3d 523 (D.C. Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Landis v. North Am. Co., 299 U.S. 248 (1936) . . . . . . . . . . . . . . . . . . . . . 30, 32

Leitao v. Reno, 311 F.3d 453 (1st Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Lesesne ex rel. B.F. v. Dist. of Columbia, 447 F.3d 828 (D.C. Cir. 2006) . . . . . 22

McBryde v. Comm. to Review Circuit Council Conduct & Disability
    Orders of the Judicial Conf. of the United States, 264 F.3d 52
    (D.C. Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

McSurely v. McClellan, 426 F.2d 664 (D.C. Cir. 1970) . . . . . . . . . . . . . . . . . . . 29

Mississippi v. Johnson, 71 U.S. 475 (1866) . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Nixon v. Fitzgerald, 457 U.S. 731 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Nixon v. United States, 506 U.S. 224 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . 13

People's Mojahedin Org. v. Department of State, 182 F.3d 17
    (D.C. Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 26

*Public Citizen v. United States Dep't of Justice, 491 U.S. 440 (1989) . . . . . . . 13

Rasul v. Bush, 542 U.S. 466 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 32

Rhines v. Weber, 544 U.S. 269 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30, 33

Roche v. Evaporated Milk Ass'n, 319 U.S. 21 (1943) . . . . . . . . . . . . . . . . . . . . 35

Scott v. Dist. of Columbia, 139 F.3d 940 (D.C. Cir. 1998) . . . . . . . . . . . . . . . . 20

Serono Labs, Inc. v. Shalala, 158 F.3d 1313 (D.C. Cir. 1998) . . . . . . . . . . . . . 18

Smith v. Ashcroft, 295 F.3d 425 (4th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . 21

United States v. Kin-Hong, 110 F.3d 103 (1st Cir. 1997) . . . . . . . . . . . . . . . . 15

*Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense
  Council, Inc., 435 U.S. 519 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 25

Weinstein v. Bradford, 423 U.S. 147 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Yong v. INS, 208 F.3d 1116 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . 33-35

Zadvydas v. Davis, 533 U.S. 678 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Zalawadia v. Ashcroft, 371 F.3d 292 (5th Cir. 2004) . . . . . . . . . . . . . . . . . . . 21

Zegarra-Gomez v. I.N.S., 314 F.3d 1124 (9th Cir. 2003) . . . . . . . . . . . . . . . . 21

**Statutes:**

8 U.S.C. § 1252(a)(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35, 36

8 U.S.C. § 1252(b)(4)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

28 U.S.C. § 1291 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

28 U.S.C. § 1292(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

28 U.S.C. § 1651(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

28 U.S.C. § 2243 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

Authorization for Use of Military Force, Pub. L. No. 107-40,
  115 Stat. 224 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*Detainee Treatment Act of 2005, Pub. L. No. 109-148,
    119 Stat. 2680 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

    § 1005(e)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 25

    *§ 1005(e)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

    § 1005(e)(2)(C)(ii) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

    § 1005(e)(2)(D) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

    § 1005(e)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

    *§ 1005(h)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29, 35, 36

Foreign Affairs Reform and Restructuring Act of 1998, Pub. L. No.
    105-277, § 2242(d), 112 Stat. 2681 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

**Rules:**

Fed. R. App. P. 23(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 6-9, 14

Fed. R. Civ. P. 65 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

## GLOSSARY

App. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Appendix

CSRT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Combatant Status Review Tribunal

DTA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Detainee Treatment Act

Supp. App. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Supplemental Appendix

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

———————————————

Nos. 05-5487, 05-5488, 05-5489, 05-5490, 05-5491, 05-5492, and 06-5042

———————————————

JAMAL KIYEMBA, Next Friend, et al.,
Appellees/Cross-Appellants,
v.
GEORGE W. BUSH, President of the United States, et al.,
Appellants/Cross-Appellees.

———————————————

EDHAM MAMET, Detainee, et al.,
Appellees/Cross-Appellants,
v.
GEORGE W. BUSH, President of the United States, et al.,
Appellants/Cross-Appellees.

———————————————

ALLADEEN & SHERIF EL-MASHAD, Detainees, et al.,
Appellees,
v.
GEORGE W. BUSH, President of the United States, et al.,
Appellants.

———————————————

ZAKIRJAN, Detainee,
Appellee,
v.
GEORGE W. BUSH, President of the United States, et al.,
Appellants.

———————————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

———————————————
———————————————

REPLY BRIEF FOR APPELLANTS AND
BRIEF FOR CROSS-APPELLEES

---

## INTRODUCTION AND SUMMARY

The Detainee Treatment Act grants this Court "exclusive" jurisdiction over pending actions brought by detainees at Guantanamo Bay, Cuba, challenging their designation and detention as enemy combatants. That "exclusive" jurisdiction precludes the district courts from exercising continuing and concurrent jurisdiction over pending habeas cases of enemy combatants, including those of the petitioners in Kiyemba and Mamet. The Supreme Court's recent decision in Hamdan v. Rumsfeld, 126 S. Ct. 2749 (2006), is not to the contrary. The district courts' orders in these habeas appeals, which prospectively restrict the Government's ability to release or transfer petitioners from Guantanamo Bay and foreshadow future proceedings governing such release or transfer, should be set aside. Because this Court's exclusive jurisdiction forecloses continuing district court jurisdiction, those prospective injunctions should have no continuing effect.

Alternatively, the Court should reverse those orders. Under the Constitution, the President has the authority to determine, in his discretion, when it is appropriate to release enemy combatants who have been detained. Neither the Constitution nor

any statute provides authorization for this Court to superintend that decision, as is envisioned by the orders. Moreover, apart from separation-of-powers concerns, the orders should be reversed because petitioners failed to establish that they were entitled to such extraordinary relief. No federal court has authority to prohibit the President from releasing and transferring a Guantanamo detainee, or to interfere with his determination as to which country the detainee should be released. Accordingly, the district courts erred in issuing preliminary injunctive relief to permit petitioners an opportunity to challenge such release or transfer. Moreover, as we have explained, because the United States will not transfer detainees to countries where it is more likely than not that they will be tortured, petitioners failed to demonstrate that they will suffer any irreparable injury after they are released from U.S. custody. In contrast, the Executive Branch's ability to carry out its constitutional duties, including warmaking and the conduct of foreign relations, is impaired by the orders' prospect of judicial oversight of those duties.

Similarly, the district court orders in <u>Alladeen</u> and <u>Zakirjan</u>, which restrict the Government's ability to release or transfer the non-enemy combatant appellees in those cases, should be reversed on the merits for the same reasons. Because the Detainee Treatment Act, however, has no application to the pending habeas cases of the non-enemy combatant appellees in <u>Alladeen</u> and <u>Zakirjan</u>, the district courts'

continuing habeas jurisdiction is unaffected.

Finally, the petitioners' challenges in <u>Kiyemba</u> and <u>Mamet</u> to the temporary stays of their cases, pending this Court's resolution of the expedited appeals in <u>Al Odah</u> v. <u>United States</u> (Nos. 05-5064, 05-5095 through 05-5116) and <u>Boumediene</u> v. <u>Bush</u> (Nos. 05-5062, 05-5063), lack merit. The district courts' orders staying their cases are interim case-management orders over which there is no appellate jurisdiction. In any event, however, the stays were a proper exercise of the district courts' discretion. The stays were limited in scope and were justified by the novel issues in the cases and the courts' interest in judicial efficiency. Neither the Supreme Court's decision in <u>Rasul</u> v. <u>Bush</u>, 542 U.S. 466 (2004), nor the habeas statute prohibits such a stay. Moreover, petitioners have not provided any reason why their habeas cases, among the hundreds of stayed pending habeas cases brought by detainees, should be singled out for immediate attention.

## ARGUMENT

**I.  THE DETAINEE TREATMENT ACT PRECLUDES THE DISTRICT COURTS' CONTINUING JURISDICTION OVER THE ENEMY COMBATANT PETITIONERS' HABEAS CLAIMS IN <u>KIYEMBA</u> AND <u>MAMET</u>.**

**A.** The district courts retain jurisdiction over the pending habeas actions of appellees Alladeen and Zakirjan, but must cede jurisdiction over the claims in

-4-

Kiyemba and Mamet to this Court. As we explained in our opening brief (at 22-24), section 1005(e)(2) of the Detainee Treatment Act of 2005 ("DTA"), Pub. L. No. 109-148, 119 Stat. 2680 (2005), grants this Court "exclusive" jurisdiction to adjudicate claims by Guantanamo detainees challenging their detention as enemy combatants. See DTA, § 1005(e)(2) (this Court "shall have exclusive jurisdiction to determine the validity of any final decision of a Combatant Status Review Tribunal that an alien is properly detained as an enemy combatant"). The Act expressly makes this "exclusive" jurisdiction applicable to pending cases. See DTA, § 1005(h)(2) (stating that section 1005(e)(2) "shall apply with respect to any claim whose review is governed by" section 1005(e)(2) "and that is pending on or after the date of the enactment of this Act").

This Court's "exclusive" jurisdiction under section 1005(e)(2) is plainly applicable to the pending habeas actions of the petitioners in Kiyemba and Mamet. Each of the petitioners in Kiyemba and Mamet, with the exception of Saddiq Turkestani, has been determined, in a "final decision" of a military Combatant Status Review Tribunal ("CSRT"), to be an enemy combatant.[1] And, because the petitioners

---

[1] Saddiq Turkestani, a petitioner in Kiyemba, was determined not to be an enemy combatant and was released from U.S. custody. See Notice of District Court Filing and Request to File Prior Under-Seal Documents in the Public Record (filed June 28, 2006). Because he has been released from United States custody, his habeas claims are moot and should be dismissed.

are contending that their detention is unlawful, they are necessarily challenging the "validity" of the final CSRT decisions that each of them "is properly detained as an enemy combatant." This Court's "exclusive" jurisdiction, therefore, applies to their pending cases.

As we explained in our opening brief (at 22-24), such an exclusive-review scheme, where applicable, precludes the exercise of jurisdiction under more general grants of jurisdiction, including habeas corpus. The DTA's exclusive-review scheme, therefore, mandates that the district courts cede jurisdiction over the petitioners' claims of unlawful detention, which must now be heard in this Court.

Because Alladeen and Zakirjan have been determined by a CSRT not to be enemy combatants, they do not challenge any final CSRT decisions. As a result, this Court's "exclusive" jurisdiction under section 1005(e)(2) is inapplicable to their cases. The district courts, therefore, may continue to exercise jurisdiction over their habeas cases. As explained in our opening brief and below, however, the district courts erred on the merits in entering orders restricting the Government's ability to remove Alladeen and Zakirjan from Guantanamo Bay.

The Supreme Court's recent decision in Hamdan v. Rumsfeld, 126 S. Ct. 2749 (2006), is not to the contrary. Although the Court's ruling in Hamdan held that section 1005(e)(1) of the DTA does not apply to habeas claims pending on the date

of its enactment, see Hamdan, 126 S. Ct. at 2769 ("we conclude that § 1005(e)(1) does not strip federal courts' jurisdiction over cases pending on the date of the DTA's enactment"), the Court specifically recognized that sections 1005(e)(2) and 1005(e)(3) apply to all pending cases challenging a final decision of a military commission or CSRT, see id. at 2764 ("paragraphs (2) and (3) of subsection (e) are expressly made applicable to pending cases").

As to whether the DTA would require transfer of a pending action "to the District of Columbia Circuit," in cases where there is already a "final decision" of a CSRT or a military commission, the Hamdan Court expressly reserved judgment. See Hamdan, 126 S. Ct. at 2769 n.14 ("We express no view about whether the DTA would require transfer of such an action to the District of Columbia Circuit."). The Court reasoned that, "because Hamdan, at least, is not contesting any final decision of a CSRT or military commission, his action does not fall within the scope of subsection (e)(2) or (e)(3)." Id. at 2769. The Hamdan Court, therefore, did not need to address whether the exclusive-review scheme independently precludes the district court from exercising jurisdiction over actions within the scope of those provisions. Thus, that issue remains before this Court.

Thus, although Hamdan holds that section 1005(e)(1) does not apply to cases pending when the DTA was enacted, such as the present appeals, Hamdan in no way

forecloses our argument based on the exclusive-review scheme set forth in section 1005(e)(2) to govern review of final CSRT decisions. This Court, therefore, should hold that the exclusive-review scheme enacted by the DTA to govern review of final CSRT decisions precludes the exercise of district court jurisdiction under more general grants of jurisdiction, including habeas corpus, and thus mandates transfer of the petitioners' claims in <u>Kiyemba</u> and <u>Mamet</u> to this Court.

**B.** Petitioners contend that the district court retains jurisdiction over their habeas cases. They assert (at 19) that <u>Hamdan</u> rejected the Government's argument that section 1005(e)(2)'s exclusive review scheme deprives the district court of jurisdiction over pending habeas claims. Petitioners rely on the <u>Hamdan</u> Court's statement that "'[t]here is nothing absurd about a scheme under which pending habeas actions * * * are preserved, and more routine challenges to final decisions rendered by those tribunals are carefully channeled to a particular court and through a particular lens of review.'" Appellees' Br. at 19 (quoting <u>Hamdan</u>, 126 S. Ct. at 2769).

The Court, however, explained that it was not "absurd" to grant this Court exclusive jurisdiction over final military commission rulings in section 1005(e)(3), and to, at the same time, permit Hamdan's habeas case to proceed in the district court, because there was no danger of "dual jurisdiction" in Hamdan's case. See <u>Hamdan</u>,

-8-

126 S. Ct. at 2768-69. Because Hamdan had not yet received a final military commission ruling, "his action does not fall within the scope of subsection (e)(2) or (e)(3)." Id. at 2769. But as to cases, such as the ones presented in these putative appeals, where there is a final decision of a military commission or a CSRT, the Court expressly reserved judgment as to whether the DTA's grant of "exclusive" jurisdiction would preclude continuing district court jurisdiction. See Hamdan, 126 S. Ct. at 2769 n.14. Thus, contrary to petitioners' argument, the Court in Hamdan did not reach, and certainly did not reject, the Government's argument that this Court's exclusive jurisdiction under (e)(2) and (e)(3) forecloses the district courts from exercising habeas jurisdiction over claims brought by detainees challenging final CSRT or military commission rulings.

Petitioners nonetheless argue (at 19-20) that the district court has continuing habeas jurisdiction because their claims seek relief "far more broad than mere declaratory relief in the form of orders stating that their CSRT decisions are 'invalid,'" and therefore do not fall within the scope of section 1005(e)(2). Specifically, they argue that their claims include challenges as to whether the Executive Branch has authority to detain them under the Constitution and laws of the

United States, whether they have been denied due process under the Fifth Amendment, and whether they are being transferred illegally to countries that engage in torture.

Such claims, however, do not take their case outside of the scope of this Court's exclusive jurisdiction under section 1005(e)(2). As we have explained, this Court's jurisdiction under section 1005(e)(2) extends to claims that the standards and procedures used by the CSRTs are not "consistent with the Constitution and laws of the United States," "to the extent the Constitution and laws of the United States are applicable." DTA § 1005(e)(2)(C)(ii). Thus, the fact that petitioners have raised constitutional or other legal challenges to the legitimacy of their detention, which is pursuant to a final decision of a CSRT, does not make their suit something other than a challenge to the validity of the final CSRT decision. Rather, the scope of section 1005(e)(2) expressly encompasses such challenges.

Petitioners further contend (at 22-23) that, even if section 1005(e)(2)'s exclusive jurisdiction encompasses pending claims, it applies only to actions challenging an alien's detention at Guantanamo Bay, Cuba, and therefore does not apply to challenges to release or transfer from detention. They argue that, since the district courts' orders granting preliminary injunctive relief concern the latter, section 1005(e)(2) does not divest the district courts of jurisdiction to enter such relief. They

contend that section 1003(a), which prohibits "cruel, inhuman, or degrading treatment or punishment" of an "individual in the custody or under the physical control of the United States Government, regardless of nationality or physical location," DTA § 1003(a), supports their argument that they may challenge their transfer from Guantanamo Bay to prevent torture or continued detention in a third country.

As we have explained, however, the DTA grants this Court exclusive jurisdiction over challenges to detention so long as the petitioners are "detained by the Department of Defense at Guantanamo Bay, Cuba." DTA § 1005(e)(2)(B)(i); see also DTA § 1005(e)(2)(D) ("The jurisdiction of the United States Court of Appeals for the District of Columbia Circuit with respect to the claims of an alien under this paragraph shall cease upon the release of such alien from the custody of the Department of Defense."). And there is no dispute that all of the petitioners in Kiyemba and Mamet are aliens currently in the custody of the Department of Defense at Guantanamo Bay pursuant to an enemy combatant determination rendered by a CSRT. Accordingly, pursuant to the Act, their claims fall within this Court's exclusive jurisdiction, and the district courts are therefore precluded from continuing to exercise jurisdiction in their habeas cases, including issuance of any orders regarding those petitioners.

II.    **IF THIS COURT DOES NOT SET ASIDE THE DISTRICT COURTS'
       PROSPECTIVE INJUNCTIONS AS PRECLUDED BY THIS COURT'S
       EXCLUSIVE JURISDICTION, THE ORDERS SHOULD
       NEVERTHELESS BE REVERSED.**

As we explained in our opening brief, the district courts erred in concluding
that preliminary injunctive relief was warranted on the merits.  We argued that the
district courts' orders should be reversed because they violate separation-of-powers
principles by infringing upon the President's authority to release or transfer
Guantanamo detainees.  We further explained that regardless of separation of powers,
the district courts erred in granting preliminary injunctive relief because there are no
legal grounds to support a conclusion that a court has the authority to superintend
decisions to relinquish custody of detainees.

A.    **Court Supervision Of The President's Discretionary Decision
      To Release Guantanamo Detainees Encroaches Upon The
      Exercise Of His Constitutional Powers.**

Petitioners contend (at 44-45) that separation-of-powers principles counsel in
favor of court oversight of release or transfer decisions, because such oversight will
prevent consolidation of power in the Executive Branch.  They note (at 45) that the
"very purpose of habeas corpus is to limit Executive power by preventing its abuse."

But the Judiciary is also of limited powers.  See DaimlerChrysler Corp. v.
Cuno, 126 S. Ct. 1854, 1860-61 (2006).  And the Constitution, through its division

of powers, has already determined which checks and balances are constitutionally necessary. <u>See</u> <u>Nixon</u> v. <u>United States</u>, 506 U.S. 224, 234-35 (1993) (Constitution provides for appropriate checks and balances). Petitioners' contention, therefore, that an additional judicial check on the Executive Branch, unauthorized by statute, fosters separation of powers, is without merit. <u>See</u> <u>Public Citizen</u> v. <u>United States Dep't of Justice</u>, 491 U.S. 440, 486 (1989) (Kennedy, J., concurring) ("Where a power has been committed to a particular Branch of the Government in the text of the Constitution * * * * [i]t is improper for this Court to arrogate to itself the power to adjust a balance settled by the explicit terms of the Constitution."); <u>Nixon</u> v. <u>Fitzgerald</u>, 457 U.S. 731, 761 (1982) (Burger, J., concurring) ("the Judiciary always must be hesitant to probe into the elements of Presidential decisionmaking" and "[s]uch judicial intervention is not to be tolerated absent imperative constitutional necessity").

As we explained in our opening brief, the President, as Commander-in-Chief, has the authority to capture individuals in armed conflict, detain them as enemy combatants, and release them upon determining that they are no longer enemy combatants or that release is otherwise appropriate. <u>Hamdi</u> v. <u>Rumsfeld</u>, 542 U.S. 507, 518 (2004) (plurality opinion) ("The capture and detention of lawful combatants and the capture, detention, and trial of unlawful combatants, by 'universal agreement

and practice,' are 'important incident[s] of war.'") (quoting Ex parte Quirin, 317 U.S. 1, 28 (1942)); Hamdan, 126 S. Ct. at 2798 ("we do not today address, the Government's power to detain [Hamdan] for the duration of active hostilities"); Authorization for Use of Military Force, Pub. L. No. 107-40, 115 Stat. 224 (2001) (recognizing that President has "authority under the Constitution to take action to deter and prevent acts of international terrorism against the United States," and authorizing him "to use all necessary and appropriate force against those nations, organizations, or persons he determines planned, authorized, committed, or aided" the September 11 attacks). To ensure against abuse of warmaking powers, the Constitution already provides a check on the Executive Branch by vesting Congress with the power to declare war, raise armies, and fund military activities.

Judicial review of the President's discretionary decision to release and transfer detainees from U.S. custody to a third country, as is envisioned by the preliminary injunctions issued in these cases, extends far beyond these constitutional checks and balances or any statutory authorization, and encroaches upon the President's authority to execute his constitutional duties. Such an exercise of judicial authority, therefore, violates separation-of-powers principles. See Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council, Inc., 435 U.S. 519, 549 (1978) (court should "not stray beyond the judicial province" by imposing on the Executive Branch "its

-14-

own notion of which procedures are 'best'"); Mississippi v. Johnson, 71 U.S. 475,

499 (1866) ("[a]n attempt on the part of the judicial department of the government to

enforce the performance" of the President's discretionary duties would be "'an absurd

and excessive extravagance'"); cf. Dalton v. Specter, 511 U.S. 462, 477 (1994) ("The

judicial power of the United States conferred by Article III of the Constitution is

upheld just as surely by withholding judicial relief where Congress has permissibly

foreclosed it, as it is by granting such relief where authorized by the Constitution or

by statute."); Franklin v. Massachusetts, 505 U.S. 788, 801 (1992) ("[w]e would

require an express statement by Congress before assuming it intended the President's

performance of his statutory duties to be reviewed for abuse of discretion" under the

Administrative Procedure Act).

Indeed, courts have routinely recognized these principles in applying the rule

of non-inquiry, most frequently in the extradition context, to prohibit judicial

interference with the Executive Branch's decision to extradite an individual, even in

the face of complaints about that individual's treatment in the third country. See

United States v. Kin-Hong, 110 F.3d 103, 110 (1st Cir. 1997) (based on "concerns

about institutional competence and by notions of separation of powers," courts will

not inquire into "'the fairness of a requesting nation's justice system'" and "'the

procedures or treatment which await a surrendered fugitive in the requesting

-15-

country'"). Such a decision is a political matter, reserved to the Executive Branch, and unreviewable by the courts. See Arnbjornsdottir-Mendler v. United States, 721 F.2d 679, 683 (9th Cir. 1983); see also People's Mojahedin Org. v. Department of State, 182 F.3d 17, 23 (D.C. Cir. 1999) (foreign policy decisions by the Executive Branch "are political judgments" that are "not subject to judicial intrusion or inquiry").

**B.    The District Courts Abused Their Discretion In Issuing Preliminary Injunctions Restricting The Government's Ability To Release Or Transfer Detainees.**

As we explained in our opening brief, petitioners failed to demonstrate on the merits that they were entitled to the extraordinary remedy of preliminary injunctive relief. Because the district courts' jurisdiction ceases as soon as petitioners are released and their habeas cases are mooted, we explained that the courts have no authority to issue relief that would affect petitioners solely after they are released or transferred out of U.S. custody or control, and that the district courts erred in relying on Federal Rule of Appellate Procedure 23(a) and 28 U.S.C. § 1651(a) as providing that authority. As a result, petitioners cannot show that they have any likelihood of obtaining such relief if their petitions for writs of habeas corpus are granted. We further explained that petitioners' alleged injury in the absence of relief – future detention or mistreatment by a third country – is speculative and therefore insufficient

to constitute irreparable harm warranting preliminary injunctive relief. Finally, we explained that the district courts' orders, by curbing the President's authority to release or transfer detainees as soon as it is determined that they are no longer enemy combatants or that release is otherwise appropriate, impair the Executive Branch's authority and are contrary to the public interest.

Petitioners contend (at 34) that the district courts' orders simply provide them "with the *opportunity* to challenge transfers they believe may result in unlawful detention or torture," and thus are within the courts' general authority to issue preliminary injunctions under Federal Rule of Civil Procedure 65. But petitioners nowhere explain how the district courts would have authority to grant actual relief relating to actions of foreign states once petitioners have been released from U.S. custody or control. Indeed, even though the district courts relied on Federal Rule of Appellate Procedure 23(a) as providing authority to prohibit transfer or release, petitioners do not rely on that rule in their brief, and thus apparently concede that the district courts thereby erred. Accordingly, if the district courts would not have the authority to issue any relief after resolving the merits, there is no basis for finding that the district courts have authority to issue preliminary relief.

To downplay the fact that petitioners have no likelihood of success on the merits, petitioners contend (at 40-41) that they need only raise a serious question as

-17-

to the merits for preliminary injunctive relief.  They argue that, because district courts have broad powers to fashion relief in habeas cases, the courts have authority to prevent petitioners' release or transfer.

But where there is only a minimal likelihood of success on the merits, as petitioners seem to concede (at 34, 40) is true here, petitioners must make an even greater showing of injury to warrant preliminary injunctive relief.  See Cuomo v. U.S. Nuclear Regulatory Comm'n, 772 F.2d 972, 974 (D.C. Cir. 1985); Serono Labs, Inc. v. Shalala, 158 F.3d 1313, 1317 (D.C. Cir. 1998).  Petitioners suggest (at 35) that they have made such a showing because they have "submitted evidence concerning Respondents' practice of transferring other detainees to the custody of countries with poor human rights records."  And they argue (at 37) that this alleged harm is not speculative because the Government has indicated that it plans to transfer or release petitioners, and the harm can be determined once the Government indicates when and to where a petitioner is being released.  Finally, petitioners assert (at 36) that release or transfer would harm them because it would preclude the district court from resolving their other claims for relief, such as declaratory and injunctive relief.  Petitioners' arguments lack merit.

Petitioners rely on newspaper articles alleging that the Government has transferred detainees to foreign countries that engage in torture or have continued to

detain the individuals.  See, e.g., App. 37-38.  In response to these allegations, the
Government submitted two declarations, explaining that detainees at Guantanamo
who are released may be subject to detention by the recipient country, based on that
country's laws, but that no detainees detained by the Department of Defense are
returned to a country where it is more likely than not that they would be tortured.  See
App. 101-107 (Prosper declaration) (identifying countries to which detainees have
been transferred for further detention and explaining policy to ensure humane
treatment of transferred detainees); 110 (Waxman declaration) (explaining that, where
detainee is transferred for release or further detention, "the detainee is transferred
entirely to the custody and control of the other government" and that "the individual
is detained, if at all, by the foreign government pursuant to its own laws").  The
Department of Defense has "elected not to transfer detainees to their country of origin
because of torture concerns."  App. 111.  Petitioners offer no evidence to rebut or to
discount these declarations, signed under penalty of perjury.

        Moreover, petitioners concede (at 37) that their alleged harm will not
materialize unless and until the Government decides to transfer them to a country
where they will be tortured or further detained.  The petitioners determined not to be
enemy combatants, however, will be transferred to another country only with the
understanding that, from the United States' perspective, they can be released, and will

-19-

not be transferred to a country where it is more likely than not that they will be tortured. <u>See</u> App. 101, 109. As for the enemy combatant petitioners, because the Government has not indicated any intent to release or transfer them, any alleged injury stemming from release or transfer is entirely speculative.

Petitioners claim (at 36- 37) that preliminary injunctive relief is necessary to preserve their other claims for relief, such as declaratory and injunctive relief, from becoming moot once they are transferred or released. A request for injunctive or declaratory relief, however, will not be mooted by release if the petitioner can demonstrate that there is a continuing and legally-significant adverse effect from the past alleged injury, or a significant possibility that the injury or controversy will reoccur in the future <u>to the petitioner</u>. <u>See</u> <u>Weinstein</u> v. <u>Bradford</u>, 423 U.S. 147, 148-49 (1975) (controversy is not likely to reoccur unless there is at least "a reasonable expectation that the same complaining party would be subjected to the same action again"); <u>Anyanwutaku</u> v. <u>Moore</u>, 151 F.3d 1053, 1057 (D.C. Cir. 1998) ("when a prisoner seeking injunctive or declaratory relief challenges his parole eligibility date but is subsequently released on parole, his claims are moot unless he alleges continuing adverse consequences from the challenged parole records"); <u>Scott</u> v. <u>Dist. of Columbia</u>, 139 F.3d 940, 941 (D.C. Cir. 1998) ("Normally, a prisoner's transfer or release from a prison moots any claim he might have for equitable relief arising out

of the conditions of his confinement in that prison."). As to the former requirement, "'some tangible, concrete effect' [must] remain," which is "susceptible to judicial correction" in order to prevent a case from becoming moot. See McBryde v. Comm. to Review Circuit Council Conduct & Disability Orders of the Judicial Conf. of the United States, 264 F.3d 52, 57 (D.C. Cir. 2001).

Cases in the immigration context, which have held that deportation from the United States does not moot a previously filed habeas case regarding a person's immigration status, are not to the contrary. In those circumstances, the petitioners' habeas cases were not rendered moot by deportation because the immigration status of the petitioners still presented a live question with real immigration consequences. See, e.g., Zalawadia v. Ashcroft, 371 F.3d 292, 298 (5th Cir. 2004) (deportation order, which would have barred petitioner's reentry into the United States for a certain number of years, presented a live controversy); Zegarra-Gomez v. I.N.S., 314 F.3d 1124, 1127 (9th Cir. 2003) (same); Chong v. District Director, I.N.S., 264 F.3d 378, 385-86 (3d Cir. 2001) (same); Smith v. Ashcroft, 295 F.3d 425, 428 (4th Cir. 2002) (same); Leitao v. Reno, 311 F.3d 453, 455-56 (1st Cir. 2002) (same).

In this case, however, petitioners fail to demonstrate that any live controversy will remain after they are released. Petitioners' release from United States custody, unlike deportation pursuant to an order of removal, imposes no collateral immigration

-21-

consequences on petitioners. Indeed, petitioners, as aliens outside the territory of the United States, have no immigration status in the United States under which they could claim any rights or benefits. See U.S. Br. in Qassim at 54-60. Thus, those immigration cases are wholly inapposite.

Petitioners' contention that they seek relief other than that related to their release is belied by their habeas petitions. Those petitions seek declaratory and injunctive relief only insofar as petitioners' detention is concerned. See, e.g., Supp. App. 280-81. And to the extent petitioners made general requests for declaratory relief and "other relief as the Court may deem necessary and appropriate," see, e.g., Supp. App. 281, such general requests are insufficient to keep alive an otherwise moot case or controversy. See Lesesne ex rel. B.F. v. Dist. of Columbia, 447 F.3d 828, 833 (D.C. Cir. 2006) (a request for declaratory relief, accompanied by a "boilerplate request for 'any other relief the Court deems just,'" was not "sufficient to forestall mootness").

Petitioners likewise seek to shift the balance favoring injunctive relief by disputing the Government's assertions that courts' review of proposed release or transfer decisions will impair the Executive Branch's ability to speak with one voice in conducting foreign relations and to exercise its discretionary authority in determining when to release individuals detained as enemy combatants. Petitioners

-22-

contend (at 38) that the Government demonstrated that injunctive relief poses no harm when it withdrew immediate plans to return petitioner Alladeen to Egypt. Petitioners, however, misconstrue the harm caused by the preliminary injunction. Although the Government does seek to release non-enemy combatant detainees as soon as feasible, the Government's injury from the preliminary injunction is not only the delay in release, as petitioners suggest (at 38-39), but also that the preliminary injunction foreshadows court interference and oversight into release or transfer decisions, which are a matter of Executive discretion.  Thus, the fact that the Government voluntarily chose to delay Alladeen's repatriation due to a material change in circumstances indicates solely that the Government was reconsidering its release decision, not that it agreed that court oversight of its decision was appropriate.

Petitioners also dispute (at 39) the Government's assertion that the preliminary injunctions will hinder negotiations with foreign states, arguing that any disclosures of negotiations will arise only if a petitioner challenges a transfer once it is scheduled to occur.  But the Government has explained that the preliminary injunctions indicate that a detainee is permitted to challenge his release or transfer, and that the specter of judicial review would likely chill foreign states from negotiating receipt of detainees.  App. 105-07 ("If the Department [of State] were required unilaterally to disclose outside appropriate Executive branch channels its communications with a

foreign government relating to particular mistreatment or torture concerns, that government, as well as other governments, would likely be reluctant in the future to communicate frankly with the United States concerning such issues."); 111-12 ("[r]equiring the United States to unilaterally disclose information about proposed transfers and negotiations outside of appropriate executive branch agencies could adversely affect the relationship of the United States with other countries and impede our country's ability to obtain vital cooperation from concerned governments with respect to military, law enforcement, and intelligence efforts"). Thus, because the prospect of judicial review has a chilling effect, even if the petitioner ultimately decides not to challenge his release or transfer, the injury alleged by the Government will have already occurred.

Petitioners further argue (at 39-40) that judicial review of release or transfer decisions does not impair the Executive Branch's ability to speak with one voice in foreign relations because courts routinely review determinations as to whether immigration detainees, more likely than not, will be tortured if sent to a particular country. But, in immigration cases, in an exercise of its plenary power, Congress has expressly authorized judicial review of orders of removal, including review of claims under the Convention Against Torture. See 8 U.S.C. § 1252(a)(4). And judicial review over claims under the Convention is expressly limited both by scope, see

Foreign Affairs Reform and Restructuring Act of 1998, Pub. L. No. 105-277, § 2242(d), 112 Stat. 2681 (codified at 8 U.S.C. § 1231 note) (no court has jurisdiction to review claims under the Convention except in reviewing a final order of removal), and by the standard of review, see 8 U.S.C. § 1252(b)(4)(B) (findings of fact are conclusive unless reasonable adjudicator would be compelled to conclude the contrary). As the Supreme Court has explained, "principles of judicial review in this area recognize primary Executive Branch responsibility." Zadvydas v. Davis, 533 U.S. 678, 700 (2001). Those principles "require courts to listen with care when the Government's foreign policy judgments, including, for example, the status of repatriation negotiations, are at issue, and to grant the Government appropriate leeway when its judgments rest upon foreign policy expertise." Id. Moreover, it is one thing for Congress to expressly exercise its plenary constitutional power to restrict the Executive Branch, but quite another for the courts to do so. See Dalton v. Specter, 511 U.S. at 476 ("How the President chooses to exercise the discretion Congress has granted him is not a matter for our review."); Vermont Yankee, 435 U.S. at 546-48 (explaining that, where Congress has vested discretion in the Executive Branch to engage in rulemaking, courts have no authority to interfere based on "perceived procedural shortcomings").

Finally, petitioners allege (at 42) that a public interest in due process for the detainees counsels in favor of the preliminary injunctions. As we have explained in previous briefing to this Court, the petitioners, as aliens outside of the territory of the United States, do not have a constitutional right to due process. See 32 County Sovereignty Comm. v. Dep't of State, 292 F.3d 797, 799 (D.C. Cir. 2002) (a "'foreign entity without property or presence in this country has no constitutional rights, under the due process clause or otherwise'") (quoting People's Mojahedin Org. of Iran v. Department of State, 182 F.3d 17, 22 (D.C. Cir. 1999)). Thus, there is no public interest in enforcing rights that petitioners do not have. Rather, as we have explained, the public interest is better served by releasing detainees as soon as possible after it is determined that they are no longer enemy combatants or that release is otherwise appropriate.

In sum, the district courts erred in determining that preliminary injunctive relief was warranted on the merits. Petitioners rely solely on speculation, contrary to sworn declarations submitted by federal officials, that, in the absence of relief, they will be subject to torture or further detained by third countries after they are released. Moreover, they provide no authority by which the courts may review and grant relief regarding the release or transfer of detainees.

**C.    The All Writs Act Does Not Authorize Preliminary Injunctive Relief Here.**

Petitioners renew their argument that the district courts have authority to prevent their transfer from Guantanamo Bay, but rely on the All Writs Act, 28 U.S.C. § 1651(a), as an alternative basis for that authority.  Petitioners argue (at 43-44) that the district courts' authority under the All Writs Act is triggered because the Government is attempting to thwart the district courts' (and this Court's) ability to adjudicate petitioners' habeas cases.  Petitioners rely on the Government's release of the petitioners in Qassim only days before their case was scheduled to be argued in this Court.

The All Writs Act, however, "is not itself a grant of jurisdiction."  In re Tennant, 359 F.3d 523, 527 (D.C. Cir. 2004).  And, for all the reasons explained above, the district courts lack authority to interfere with the Executive Branch's decision to release or transfer Guantanamo detainees.  The All Writs Act, therefore, provides no basis to reach a different conclusion.

In any event, petitioners' allegations lack merit.  As explained in our appellee brief in Qassim, the United States (for months) was actively seeking to resettle the petitioners in that case after the CSRT determined that they were no longer enemy combatants.  Typically, when the CSRT finds that a detainee should no longer be

-27-

classified as an enemy combatant, the detainee is returned to his native country. The petitioners in Qassim, however, vigorously opposed being returned to China, and the United States, consistent with its policy against returning an individual to a country when it is more likely than not that he will be tortured, determined that it could not return petitioners to China. Thus, petitioners continued to be detained by the military at Guantanamo Bay, pending the outcome of extensive diplomatic efforts to locate an appropriate country to accept them. Those extensive efforts to resettle the Qassim petitioners proceeded in good faith and finally came to fruition as soon as the government of Albania agreed to accept the Qassim petitioners.

## III.  THE DISTRICT COURTS DID NOT ABUSE THEIR DISCRETION IN STAYING THE CASES IN KIYEMBA AND MAMET PENDING THIS COURT'S RESOLUTION OF THE EARLIER GUANTANAMO DETAINEE APPEALS.

**A.** Petitioners in Kiyemba and Mamet challenge the district courts' orders staying their habeas petitions pending this Court's resolution of the appeals of Al Odah v. United States (Nos. 05-5064, 05-5095 through 05-5116), and Boumediene v. Bush (Nos. 05-5062, 05-5063), which were argued before this Court on September 8, 2005 and March 22, 2006. Petitioners seek to have the stay vacated on appeal, or by writ of mandamus. See Appellees' Br. at 1 (alleging jurisdiction under 28 U.S.C. §§ 1292(a)(1) and 1651(a)). The district courts' orders, however, are interim case-

management orders over which there is no appellate jurisdiction. Nor do such routine orders present an "extraordinary situation[]" of a court acting outside its authority so as to warrant a writ of mandamus. Gulfstream Aerospace Corp. v. Mayacamas Corp., 485 U.S. 271, 289 (1988).

In appealing the district courts' orders staying their habeas cases, petitioners invoke this Court's jurisdiction under 28 U.S.C. § 1292(a)(1). But "[a]n order by a federal court that relates only to the conduct or progress of litigation before that court ordinarily is not considered an injunction and therefore is not appealable under § 1292(a)(1)." Gulfstream, 485 U.S. at 279. That principle is directly applicable here, where the stays were case-management orders entered to ensure consistent and expeditious treatment of overlapping issues raised in numerous petitions.

Although not expressly invoked by petitioners, the Court also lacks jurisdiction to review the district courts' stays under 28 U.S.C. § 1291, pursuant to the collateral order doctrine. See Dellinger v. Mitchell, 442 F.2d 782, 789 & n.12 (D.C. Cir. 1971) (rejecting contention that stay was appealable under collateral order doctrine because that would permit appeals of all stay orders); see also McSurely v. McClellan, 426 F.2d 664, 671 n.47 (D.C. Cir. 1970) (limiting appellate review of stays to those that are "indefinite").

**B.** Even if this Court does have appellate jurisdiction over the district courts' orders, those stays were entirely proper. A district court "has broad discretion to stay proceedings as an incident to its power to control its own docket." Clinton v. Jones, 520 U.S. 681, 706 (1997); accord Rhines v. Weber, 544 U.S. 269, 278 (2005). In exercising that discretion, the district court "must weigh competing interests and maintain an even balance." Landis v. North Am. Co., 299 U.S. 248, 254-55 (1936). When a case presents "great issues" and "novel problems of far-reaching importance to the parties and the public," and a decision in a related case "will settle many and simplify them all," a stay is unquestionably proper, so long as it is "kept within the bounds of moderation." Landis, 299 U.S. at 256. As the Supreme Court has explained, "'[e]specially in cases of extraordinary public moment, [a plaintiff] may be required to submit to delay not immoderate in extent and not oppressive in its consequences if public welfare or convenience will thereby be promoted.'" Clinton, 520 U.S. at 707 (quoting Landis, 299 U.S. at 256).

In accordance with these standards, the district courts properly exercised their discretion in staying the merits of petitioners' habeas cases pending this Court's resolution of the related Guantanamo detainee appeals. See App. 46-47, 62 (orders staying cases pending resolution of appeals in In re Guantanamo Detainee Cases, No. 02-0299, et al., (on appeal sub nom. Al Odah v. United States, Nos. 05-5064, 05-5095

through 05-5116), and <u>Khalid</u> v. <u>Bush</u>, No. 04-1142, (on appeal sub nom.
<u>Boumediene</u> v. <u>Bush</u>, Nos. 05-5062, 05-5063)).

As an initial matter, the stays were of limited scope. They did not stay the
district courts' adjudication of petitioners' preliminary injunction motions, bar
petitioners from filing emergency motions, or prevent the parties from "availing
themselves of the procedures set forth in the Protective Order." App. 62 (Mamet
Order); 47-48 (Kiyemba order). What is stayed is the adjudication of the merits of
petitioners' habeas claims. Those claims raise the same legal issues (<u>i.e.</u>, whether
they are properly being held as enemy combatants and whether the CSRT procedures
comport with due process requirements for aliens held abroad) that are currently
being addressed in the related Guantanamo detainee cases pending before this Court
on expedited appeal. This Court's decisions in those related cases will significantly
simplify the issues to be decided by the district courts in these cases. The related
appeals have already been briefed and argued before this Court on an expedited basis,
and the parties are awaiting a decision. The district courts' stays, therefore, are likely
to expire shortly.

Once the Court issues a decision in the related appeals, the district courts can
apply that decision directly to petitioners' cases, rather than having to grapple with
those issues in the first instance, and then having to reevaluate petitioners' cases in

light of this Court's decision. The district courts, therefore, appropriately found that "economy of time and effort for [the court], for counsel, and for litigants," Landis, 299 U.S. at 254, counseled in favor of a stay.

**C.** Petitioners argue that the stays are in violation of the Supreme Court's mandate in Rasul v. Bush, 542 U.S. 466 (2004), requiring district courts to conduct immediate hearings on the merits of the Guantanamo detainees' habeas cases. The Court's ruling in Rasul, however, did not order the district courts to hold such hearings. The Court simply held that the district courts had jurisdiction to hear the petitioners' habeas cases, and expressly declined to decide what proceedings would be required. See Rasul, 542 U.S. at 485 ("Whether and what further proceedings may become necessary after respondents make their response to the merits of petitioners' claims are matters that we need not address now."). The district courts have acted in accordance with the ruling in Rasul, in that they did not dismiss the habeas petitions for lack of jurisdiction. Once the stays expire, these cases can proceed, either in the district court or as petitions for review in this Court pursuant to the Detainee Treatment Act. The stays in these cases, therefore, in no way violate Rasul.

Petitioners further argue that a district court's discretion to issue a stay is more circumscribed when a habeas petition is at issue. While it is true that habeas petitions should, as a general matter, be considered promptly, see 28 U.S.C. § 2243, Chatman-

-32-

Bey v. Thornburgh, 864 F.2d 804, 814 (D.C. Cir. 1988) (en banc), a district court is not prohibited from staying a habeas petition. The Supreme Court rejected that argument in Rhines v. Weber, 544 U.S. 269, 279 (2005), in the context of a mixed habeas petition, holding that "[t]he Court of Appeals erred to the extent it concluded that stay and abeyance is always impermissible." The Court recognized that in certain circumstances a court may stay a habeas petition without abusing its discretion, such as when other interests "outweigh[] the competing interests in finality and speedy resolution" of habeas petitions. See id. at 278. A stay is particularly warranted here given the threshold issues now pending before this Court in Al Odah and Boumediene and the separation-of-powers concerns raised by this litigation, which counsel against allowing these cases to proceed before the threshold issues have been resolved. Although the Government does not believe that Al Odah and Boumediene may properly proceed as habeas corpus actions, we have urged this Court to convert the pending appeals in those cases into petitions for review under the DTA, and to decide the constitutional and other questions raised in those appeals under the DTA, without further briefing and as expeditiously as possible.

Relying on Yong v. INS, 208 F.3d 1116 (9th Cir. 2000), petitioners argue (Br. at 28-29) that the stays in these habeas cases pending resolution of a related appeal constitute an abuse of discretion. But the Ninth Circuit's decision, which in any

-33-

event is not binding precedent in this Court, does not support that conclusion. To the contrary, the court recognized that "a short stay may be appropriate in a habeas case to await a determination in a parallel case." Id. at 1120. Although the Ninth Circuit held that the district court's stay of a habeas petition pending resolution of all appeals in a related case, including potential review by the Supreme Court and any subsequent remand, was an abuse of discretion in that case, its holding was based on the duration of the stay balanced against its justifications. See Yong, 208 F.3d at 1119 ("term is indefinite"); id. ("stay could remain in effect for a lengthy period of time, perhaps for years"); id. at 1120 (stay "delay[ed], potentially for years, any progress on his petition"); id. at 1121 ("indefinite, and potentially lengthy, stay imposed here"). The court explained that, "[i]f a stay is especially long or its term is indefinite, we require a greater showing to justify it," id. at 1119, and "considerations of judicial economy," alone, are not sufficient, id. at 1120-21. The Ninth Circuit found that the district court's purported justifications for the stay (conservation of the INS's resources and intra-district uniformity) would not, in fact, be furthered by the stay. Id. at 1121. In addition, the issues between the two cases were not identical, so that judicial economy did not weigh heavily in favor of a stay. Id.

The stays in these cases are readily distinguishable from that in Yong. The district courts' stays will expire upon resolution of the related and expedited appeals

-34-

in <u>Al Odah</u> and <u>Boumediene</u>.  Those appeals have already been briefed and argued in this Court.  Thus, unlike in <u>Yong</u>, the stays here are not indefinite.  Moreover, the stays are justified not only by judicial economy, but also by significant governmental and public interests, which was not the case in <u>Yong</u>.  <u>See</u> 208 F.3d at 1121 ("stay does not advance the INS's interests in any significant way" and "has not promoted uniformity in that district").

And to the extent petitioners seek the same relief (<u>i.e.,</u> a lift of the stay and immediate consideration of the merits of their habeas cases) by a writ of mandamus instead of by appeal, that relief is not appropriate in these cases.  A writ of mandamus is warranted only in "exceptional" cases "'to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so.'"  <u>Gulfstream</u>, 485 U.S. at 289 (quoting <u>Roche</u> v. <u>Evaporated Milk Ass'n,</u> 319 U.S. 21, 26 (1943)).  Mandamus is a "'drastic and extraordinary' remedy 'reserved for really extraordinary causes.'"  <u>Cheney</u> v. <u>United States Dist. Court for the Dist. of Columbia</u>, 542 U.S. 367, 380 (2004) (quoting <u>Ex parte Fahey</u>, 332 U.S. 258, 259-60 (1947)).  The district courts' entry of stays pending an expedited and related appeal are reasonable case-management measures that certainly fall within the

bounds of the district courts' authority, and are therefore not subject to a writ of mandamus. See id. at 380-81 (mandamus not appropriate unless district court acts ultra vires).

Mandamus is not a proper remedy whenever there is a minimal delay in the resolution of a habeas petition. Petitioners have not identified any cases where a writ of mandamus issued directing a district court to vacate a limited stay of a habeas petition, as is at issue in this case, nor have they presented any "exceptional circumstances" warranting mandamus. See Gulfstream, 485 U.S. at 290 (no mandamus where petitioner "failed to show that the District Court clearly overstepped its authority"). Therefore, the district courts did not abuse their discretion in granting a stay pending resolution of the related Al Odah and Boumediene appeals, and issuance of a writ of mandamus would be unwarranted.

**D.** Petitioners further contend that the stays should be reversed because they contravene the Suspension Clause. As petitioners recognize (at 30), however, the Suspension Clause is a limitation on Congress's powers, not the courts', and is therefore inapplicable. Moreover, as we have explained at length in Al Odah and Boumediene, the Suspension Clause is inapplicable to aliens held outside sovereign U.S. territory at Guantanamo Bay, Cuba.

In any event, however, the courts' stays do not operate as a suspension of petitioners' habeas corpus cases. As we have explained, once this Court issues a decision in <u>Al Odah</u> and <u>Boumediene</u>, petitioners' habeas cases will proceed, either in the district court or as petitions for review in this Court pursuant to the Detainee Treatment Act. Thus, the practical effect of the stays is not a suspension of the writ, but merely a delay in the adjudication of their claims. Petitioners provide no support for the proposition that a temporary delay in habeas proceedings constitutes a suspension of the writ.

**E.** Petitioners suggest that their habeas cases should be singled out from the stays that have been imposed in hundreds of pending habeas cases brought by Guantanamo detainees because their CSRT determinations are factually suspect. Petitioners urge (at 32) that a habeas hearing is "necessary to separate wheat from chaff." But this is precisely what the CSRT did. Each of petitioners received an individualized hearing before the CSRT, pursuant to which all of the petitioners in <u>Kiyemba</u> and <u>Mamet</u> (with the exception of Turkestani) were determined to be enemy combatants.

Petitioners' suggestion that the CSRT may have erred in its determination does not warrant vacatur of the stays in their cases. Petitioners have had an opportunity before the Administrative Review Board to raise any new evidence as to whether

-37-

continued detention is appropriate. After this Court has issued a decision in <u>Al Odah</u> and <u>Boumediene</u>, petitioners will have an opportunity directly to challenge the CSRT's determination either through the DTA or habeas. And the fact that the CSRTs determined, in individualized hearings, that some Uighurs were not enemy combatants, has no bearing on whether petitioners in this case were properly designated enemy combatants.

Thus, petitioners' argument that their cases, out of hundreds of pending habeas cases by Guantanamo detainees, should be excepted from the stay orders because the CSRT may have erred, is plainly insufficient. All of the Guantanamo detainees who have been determined to be enemy combatants by the CSRT, are still being detained at Guantanamo Bay, and have brought habeas cases challenging their detention, have alleged that they are not enemy combatants and that the CSRT erred. Petitioners, therefore, have presented no reason why their cases should receive exceptional treatment.

## CONCLUSION

For the foregoing reasons, we respectfully request that the Court reverse the district court orders in <u>Alladeen</u> and <u>Zakirjan</u> restricting removal or transfer of petitioners from Guantanamo Bay, Cuba. We further ask that this Court set aside the district court orders in <u>Kiyemba</u> and <u>Mamet</u>, and order the transfer of the habeas petitions to this Court, or, in the alternative, to reverse the district court orders granting preliminary injunctive relief and affirm the orders staying the habeas cases.

Respectfully submitted,


PETER D. KEISLER
Assistant Attorney General

GREGORY G. KATSAS
Deputy Assistant Attorney General

DOUGLAS N. LETTER
 (202) 514-3602
ROBERT M. LOEB
 (202) 514-4332
CATHERINE Y. HANCOCK
 (202) 514-3469
Attorneys, Appellate Staff
Civil Division, Room 7268
U.S. Department of Justice
950 Pennsylvania Ave., N.W.
Washington, D.C.  20530-0001

AUGUST 2006

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)(7)(C)
## OF THE FEDERAL RULES OF APPELLATE PROCEDURE

I hereby certify, pursuant to Fed. R. App. P. 32(a)(7)(C) and D.C. Circuit Rule 32(a), that the foregoing brief is proportionally spaced, has a typeface of 14 point and contains 8,518 words (which does not exceed the applicable 14,000 word limit), according to the word-count of Corel WordPerfect version 12.

Catherine Y. Hancock

## CERTIFICATE OF SERVICE

I hereby certify that on August 2nd, 2006, I filed and served the foregoing Reply Brief for Appellants and Brief for Cross-Appellees by causing an original and fourteen copies to be delivered to the Court via hand delivery, and by causing two paper copies to be delivered to lead counsel of record via Federal Express or hand delivery, as indicated, and by electronic mail:

P. Sabin Willett                                   (Federal Express)
Neil McGaraghan
BINGHAM MCCUTCHEN LLP
150 Federal Street
Boston, MA 02110-1726
(617) 951-8000
Email: sabin.willett@bingham.com
       neil.mcgaraghan@bingham.com

Susan Baker Manning                                (hand delivery)
BINGHAM MCCUTCHEN LLP
1120 20th Street, NW
Suite 800
Washington, DC 20036
(202) 778-6150
Email: susan.manning@bingham.com

Carol Elder Bruce                                  (hand delivery)
VENABLE LLP
575 7th Street, NW
Suite 1000
Washington, DC 20004-1601
(202) 344-4000
Email: cebruce@venable.com

Barbara J. Olshansky                    (Federal Express)
Gitanjali Gutierrez
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway
7th Floor
New York, NY 10012
(212) 614-6439
Email: bjo@ccr-ny.org

Jonathan I. Blackman                    (Federal Express)
CLEARLY GOTTLIEB
 STEEN & HAMILTON LLP
One Liberty Plaza
New York, NY 10006
(212) 225-2490
Email: jblackman@cgsh.com


                              Catherine Y. Hancock