IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MOHAMMED AHMED ALI AL-ASADI,

Petitioner,

v.

GEORGE W. BUSH, *et al.*,

Respondents.

Civil Action No. 05-2197 (HHK)

**DECLARATION OF DAVID N. COOPER**

Pursuant to 28 U.S.C. § 1746, I, Lieutenant Colonel David N. Cooper, Judge Advocate General's Corps, United States Air Force Reserve , hereby state that to the best of my knowledge, information, and belief, the following is true, accurate and correct:

1. I am a Legal Advisor to the Office for the Administrative Review of the Detention of Enemy Combatants at U.S. Naval Base Guantanamo Bay, Cuba (OARDEC). In that capacity I am an advisor to the Director, Combatant Status Review Tribunals.

2. I hereby certify that the documents attached hereto constitute a true and accurate copy of the portions of the record of proceedings before the Combatant Status Review Tribunal related to petitioner Mohammed Ahmed Ali Al-Asadi that are suitable for public release. The portions of the record that are classified or considered law enforcement sensitive are not attached hereto or were redacted by an OARDEC staff member. This staff member also redacted information that would personally identify certain U.S. Government personnel in order to protect the personal privacy and security of those individuals.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: 11 October 2006

[signature] LtCol, USAFR

David N. Cooper
Lt Col, JAG Corps, USAFR



# Department of Defense
## Director, Combatant Status Review Tribunals

OARDEC/Ser: 412

~~FOR OFFICIAL USE ONLY~~

8 0 NOV 2004

From: Director, Combatant Status Review Tribunal

Subj: **REVIEW OF COMBATANT STATUS REVIEW TRIBUNAL FOR DETAINEE ISN # 198**

Ref: (a) Deputy Secretary of Defense Order of 7 July 2004
(b) Secretary of the Navy Order of 29 July 2004

1. I concur in the decision of the Combatant Status Review Tribunal that Detainee ISN #198 meets the criteria for designation as an Enemy Combatant, in accordance with references (a) and (b).

2. This case is now considered final and the detainee will be scheduled for an Administrative Review Board.

J. M. McGARRAH
RADM, CEC, USN

Distribution:
NSC (Mr. John Bellinger)
DoS (Ambassador Prosper)
DASD-DA
JCS (J5)
SOUTHCOM (CoS)
COMJTFGTMO
OARDEC (Fwd)
CITF Ft Belvoir

~~FOR OFFICIAL USE ONLY~~

UNCLASSIFIED

22 Nov 04

MEMORANDUM

From: Legal Advisor
To: Director, Combatant Status Review Tribunal

Subj: LEGAL SUFFICIENCY REVIEW OF COMBATANT STATUS REVIEW TRIBUNAL FOR DETAINEE ISN # 198

Ref: (a) Deputy Secretary of Defense Order of 7 July 2004
(b) Secretary of the Navy Implementation Directive of 29 July 2004

Encl: (1) Appointing Order for Tribunal #7 of 13 September 2004
(2) Record of Tribunal Proceedings

1. Legal sufficiency review has been completed on the subject Combatant Status Review Tribunal in accordance with references (a) and (b). After reviewing the record of the Tribunal, I find that:

a. The detainee was properly notified of the Tribunal process and chose to participate in the Tribunal process. During the Tribunal, the Recorder stated that he would like a closed session to present classified information to the Tribunal. At this point the detainee stated that he no longer wished to make a statement. The detainee asked instead that his Personal Representative relay their earlier conversations concerning the Unclassified Summary to the Tribunal.

b. The Tribunal was properly convened and constituted by enclosure (1). Note that some information in exhibit R-3 was redacted. The FBI properly certified in exhibit R-2 that the redacted information would not support a determination that the detainee is not an enemy combatant. Additionally, some information contained in exhibits R-4 and R-5 was redacted. It is clear that the information redacted, Internee Serial Numbers, would not support a determination that the detainee is not an enemy combatant.

c. The Tribunal complied with all provisions of references (a) and (b).

d. The detainee requested no witness nor did he request any classified or unclassified documents be produced.

e. The Tribunal's decision that detainee # 198 is properly classified as an enemy combatant was unanimous.

f. The detainee's Personal Representative was given the opportunity to review the record of proceedings and declined to submit comments to the Tribunal.

UNCLASSIFIED

UNCLASSIFIED

Subj: LEGAL SUFFICIENCY REVIEW OF COMBATANT STATUS REVIEW TRIBUNAL FOR DETAINEE ISN # 198

2. The proceedings and decision of the Tribunal are legally sufficient and no corrective action is required.

3. I recommend that the decision of the Tribunal be approved and the case be considered final.

JAMES R. CRISFIELD JR.
CDR, JAGC, USN



UNCLASSIFIED



Department of Defense
Director, Combatant Status Review Tribunals

13 Sep 04

From: Director, Combatant Status Review Tribunals

Subj: APPOINTMENT OF COMBATANT STATUS REVIEW TRIBUNAL #7

Ref: (a) Convening Authority Appointment Letter of 9 July 2004

By the authority given to me in reference (a), a Combatant Status Review Tribunal established by "Implementation of Combatant Status Review Tribunal Procedures for Enemy Combatants Detained at Guantanamo Bay Naval Base, Cuba" dated 29 July 2004 is hereby convened. It shall hear such cases as shall be brought before it without further action of referral or otherwise.

The following commissioned officers shall serve as members of the Tribunal:

MEMBERS:

[REDACTED], Colonel, U.S. Army; President

[REDACTED], Commander, JAGC, U.S. Navy; Member (JAG)

[REDACTED], Lieutenant Commander, U.S. Navy; Member

J. M. McGARRAH
Rear Admiral
Civil Engineer Corps
United States Naval Reserve



**HEADQUARTERS, OARDEC FORWARD**
GUANTANAMO BAY, CUBA
APO AE 09360

15 November 2004

MEMORANDUM FOR DIRECTOR, CSRT

FROM: OARDEC FORWARD Commander

SUBJECT: CSRT Record of Proceedings ICO ISN# 198

1. Pursuant to Enclosure (1), paragraph (I)(5) of the *Implementation of Combatant Status Review Tribunal Procedures for Enemy Combatants Detained at Guantanamo Bay Naval Base, Cuba* dated 29 July 2004, I am forwarding the Combatant Status Review Tribunal Decision Report for the above mentioned ISN for review and action.

2. If there are any questions regarding this package, point of contact on this matter is the undersigned at DSN [redacted].

CHARLES E. JAMISON
CAPT, USN

~~SECRET//NOFORN//X1~~

**(U) Combatant Status Review Tribunal Decision Report Cover Sheet**

(U) This Document is UNCLASSIFIED Upon Removal of Enclosures (2) and (4).

(U) TRIBUNAL PANEL: #7

(U) ISN#: 198

Ref: (a) (U) Convening Order for Tribunal #7 of 13 September 2004 (U)
(b) (U) CSRT Implementation Directive of 29 July 2004 (U)
(c) (U) DEPSECDEF Memo of 7 July 2004 (U)

Encl: (1) (U) Unclassified Summary of Basis for Tribunal Decision (U/~~FOUO~~)
(2) (U) Classified Summary of Basis for Tribunal Decision (S/NF)
(3) (U) Summary of Detainee Testimony (U/~~FOUO~~)
(4) (U) Copies of Documentary Evidence Presented (S/NF)
(5) (U) Personal Representative's Record Review (U/~~FOUO~~)

1. (U) This Tribunal was convened by references (a) and (b) to make a determination as to whether the detainee meets the criteria to be designated as an enemy combatant as defined in reference (c).

2. (U) On 1 November 2004, the Tribunal determined by a preponderance of the evidence that Detainee #198 is properly designated as an enemy combatant as defined in reference (c).

3. (U) In particular, the Tribunal finds that this detainee is a member of, or affiliated with, Taliban forces, as more fully discussed in the enclosures.

4. (U) Enclosure (1) provides an unclassified account of the basis for the Tribunal's decision. A detailed account of the evidence considered by the Tribunal and its findings of fact are contained in enclosures (1) and (2).

[REDACTED]
Colonel, U.S. Army
Tribunal President

DERV FM: Multiple Sources
DECLASS: X1

~~SECRET//NOFORN//X1~~

# UNCLASSIFIED SUMMARY OF BASIS FOR TRIBUNAL DECISION

**(Enclosure (1) to Combatant Status Review Tribunal Decision Report)**

TRIBUNAL PANEL: #7
ISN #: 198

**1. Introduction**

As the Combatant Status Review Tribunal (CSRT) Decision Report indicates, the Tribunal has determined that this detainee is properly classified as an enemy combatant and was part of or supporting Taliban forces. In reaching its conclusions, the Tribunal considered both classified and unclassified information. The following is an account of the unclassified evidence considered by the Tribunal and other pertinent information. Classified evidence considered by the Tribunal is discussed in Enclosure (2) to the CSRT Decision Report.

**2. Synopsis of Proceedings**

The Tribunal held this hearing on 1 November 2004. The Recorder presented Exhibits R-1 and R-2 during the unclassified portion of the Tribunal. The primary exhibit, the Unclassified Summary of Evidence (Exhibit R-1), indicates, among other things, that: the detainee is a member of the Taliban; the detainee traveled to Afghanistan in March 2001 to fight the Jihad; the detainee stayed at Taliban safe houses; the detainee's travel to Afghanistan was arranged by the Taliban; the detainee stayed at the Taliban embassy in Pakistan; the detainee was issued a Kalashnikov at the "AMR" center; the detainee was a guard at the "AMR" center for the Taliban; the detainee was in Afghanistan during the U.S. bombing campaign; the detainee fled to the Tora Bora Mountains in December 2001; and the detainee, along with a large group of Arabs who had fled Afghanistan, was arrested by the police in Pakistan. The Recorder called no witnesses.

The detainee initially participated actively in the Tribunal proceedings. When asked questions regarding the Tribunal process, the detainee stated that he understood and had no questions. Following the Recorder's request for a closed session to provide classified evidence relevant to the detainee's status, the detainee stated he no longer wished to make a statement. He stated that there remained no reason for him to participate, since he could not see all the evidence against him. He did, however, indicate that the Personal Representative had information available from their meetings to respond to some of the allegations (as outlined on the Detainee Election Form, Exhibit D-a). When the detainee was provided an opportunity to directly respond to each of the nine allegations in Exhibit R-1, the detainee answered "I don't have any response" to every allegation. The detainee also would not answer any questions posed by the Tribunal. The Tribunal President gave the detainee multiple opportunities to testify, all of which he declined. What unsworn testimony the detainee did provide, together with the detainee's statements read into the

record by the Personal Representative, is summarized in Enclosure (3) to the CSRT Decision Report. The detainee presented no other evidence and called no witnesses.

During the classified session of the Tribunal, the Recorder presented Exhibits R-3 through R-9 without comment. The Personal Representative presented no classified evidence, but did comment on the classified exhibits. After considering all of the classified and unclassified evidence, the Tribunal determined that the detainee is properly classified as an enemy combatant.

**3. Evidence Considered by the Tribunal**

The Tribunal considered the following evidence in reaching its conclusions:

a. Exhibits: R-1 through R-9 and D-a.

b. Testimony of the following persons: None.

c. Unsworn statement of the detainee:

See Enclosure (3) to the CSRT Decision Report.

**4. Rulings by the Tribunal on Detainee Requests for Evidence or Witnesses**

The detainee requested no witnesses.

The detainee requested no additional evidence be produced.

**5. Discussion of Unclassified Evidence**

The Tribunal considered the following unclassified evidence in making its determinations:

a. The Recorder offered Exhibits R-1 and R-2 into evidence during the unclassified portion of the proceeding. Exhibit R-1 is the Unclassified Summary of Evidence. While this summary is helpful in that it provides a broad outline of what the Tribunal can expect to see, it is not persuasive in that it provides conclusory statements without supporting unclassified evidence. Exhibit R-2, the FBI redaction certification, provided no usable evidence. Accordingly, the Tribunal had to look to other evidence to support the assertions on the Unclassified Summary of Evidence and the Tribunal's conclusions.

b. As noted in paragraph 2, above, the detainee allowed the Personal Representative to make a statement on his behalf, which the Personal Representative did by reading comments from the Detainee Election Form (Exhibit D-a). Afterwards, the detainee declined to answer questions posed by the Tribunal Members. In sum, the

detainee felt that he could not defend himself unless he was granted access to the classified evidence. The Personal Representative stated that he never fought against the U.S., and that he was with the Taliban before they fought the U.S. or the Northern Alliance. He also stated that he was not a guard at the Omer camp, but just one of the people who was sitting around and waiting. A summarized transcript of the detainee's unsworn testimony is attached as CSRT Decision Report Enclosure (3). The Tribunal found the detainee's testimony unpersuasive when considered together with the classified evidence. A discussion of the classified evidence is found in the CSRT Decision Report Enclosure (2).

**6. Consultations with the CSRT Legal Advisor**

None.

**7. Conclusions of the Tribunal**

Upon careful review of all the evidence presented in this matter, the Tribunal makes the following determinations:

a. The detainee was mentally and physically capable of participating in the proceeding. No medical or mental health evaluation was deemed necessary.

b. The detainee understood the Tribunal proceedings and participated in the hearing whenever he deemed it in his best interests to do so.

c. The detainee is properly classified as an enemy combatant because he was part of or supporting Taliban forces.

**8. Dissenting Tribunal Member's report**

None. The Tribunal reached a unanimous decision.

Respectfully submitted,

Colonel, U.S. Army
Tribunal President

**Summarized Unsworn Detainee Statement**

***The Tribunal President read the hearing instructions to the Detainee. The Detainee confirmed that he understood the process.***

Tribunal President: Mohammed Ahmed, do you understand this process?

Detainee: (responded by nodding head) Yes.

Tribunal President: Do you have any questions concerning the Tribunal process?

Detainee: (responded by shaking head) No.

Tribunal President: Can you please respond by saying yes or no?

Detainee: No (referring to the previous question).

***The Personal Representative submitted the Detainee Election form (Exhibit D-A) into evidence.***

Tribunal President: I would like to make note that on the Detainee Election form, the Personal Representative made the responses to the Unclassified Summary. Is that correct?

Personal Representative: Yes, ma'am.

Tribunal President: Mohammed Ahmed, will these responses also be stated again during the Tribunal?

Detainee: The Personal Representative will speak about these.

Personal Representative: The summary of our interview notes are included in his Detainee Election Form, but he has decided this morning that he would like to make a statement.

Tribunal President: Mohammed Ahmed, is that satisfactory to you?

Detainee: Yes.

***The Recorder submitted the Unclassified Summary of Evidence (Exhibit R-1) to the Tribunal.***

***The Recorder submitted Exhibit R-2 into evidence and gave a brief description of the contents of the Unclassified Summary of Evidence (Exhibit R-1).***

***The Recorder confirmed that he had no further unclassified evidence or witnesses and requested a closed Tribunal session to present classified evidence.***

Tribunal President: Mohammed Ahmed, you may now present any evidence you have to the Tribunal, and you have the assistance of your Personal Representative in doing so. Do you want to present information to this Tribunal?

Detainee: I do not wish to make a statement because there's no use in making a statement or defending myself.

Tribunal President: Would you like the Personal Representative to review the information that is on the Detainee Election Form? These are statements that you may have made to him during an interview. These statements look like they are responses to some of the allegations.

Detainee: I have many statements and evidence and information that I could present, but there is no use in presenting them because you have classified information that I cannot see or look at to defend myself against them. There is no point me saying anything.

Tribunal President: Mohammed Ahmed, this is an opportunity for you to respond to the allegations that are being presented right now. We have not had the opportunity to look at the classified information. This Tribunal is obligated to review all of the evidence that is presented to us; that includes any statements or responses that you may have to the Unclassified Evidence.

Detainee: Some of the statements that I have presented are available with the Personal Representative. Some of them are. If you have a closed classified session after this and you wish to call me to answer those allegations, then I will.

Tribunal President to Personal Representative: Okay, then why don't we go through the responses to some of these allegations or any statements that you may have seen, that you may have received from Mohammed during an interview.

Detainee: I can't respond to allegations like this. You have to give me all of the allegations that you have. I need to see everything that you have against me, so that I am able to answer all of them.

Tribunal President: Personal Representative, with your assistance in going through the allegations on the Unclassified Summary, and then Mohammed, you can respond to each of those allegations if you wish to do so.

*3.1. The detainee traveled to Afghanistan in March 2001 to fight the Jihad.*

Detainee: I don't have any response.

*3.2.. The detainee stayed at Taliban safe houses.*

*Detainee:* I don't have any response.

*3.3. The detainee's travel to Afghanistan was arranged by the Taliban.*

Detainee: I don't have any response.

*3.4. The detainee stayed at the Taliban embassy in Pakistan.*

Detainee: I don't have any response.

*3.5. The detainee was issued a Kalashnikov at the "AMR" center.*

Detainee: I don't have any response.

*3.6. The detainee was a guard at the "AMR" center for the Taliban.*

Detainee: I don't have any response.

*3.7. The detainee was in Afghanistan during the U.S. bombing campaign.*

Detainee: I don't have any response.

*3.8. The detainee fled to the Tora Bora Mountains in December 2001.*

Detainee: I don't have any response.

*3.9. The detainee, along with a large group of Arabs who had fled Afghanistan, was arrested by the police in Pakistan.*

Detainee: I don't have any response.

Tribunal President: Mohammed Ahmed, would you like to add anything to the comments or the allegations that were read?

Detainee: Add what evidence?

Tribunal President: Any other comments or evidence or any explanation to…

Detainee: Like I said, I do have statements and information and evidence. But, if there is classified information that I cannot see, then there is no use.

Tribunal President: That is correct, there is classified evidence that you are not able to see. But, this is your opportunity to make a statement based on the allegations that were presented to you during your interview. If you choose not to make any comments, then we will go on with the Tribunal process.

Detainee: I don't have anything, but the Personal Representative has some statements, if he would like to present them.

Tribunal President: Personal Representative, would you present the statements that were on the Detainee Election Form?

Personal Representative: Yes ma'am. I did want to just say that during our interviews, Mohammed Al Asadi had been very cooperative and I think he exhibited very good behavior during those interviews. He explained that he had never fought against the U.S., but that he was with the Taliban before they fought against the U.S. or the Northern Alliance. He believed that one point of evidence for him would be to confirm that the dates of his travels would show that he had traveled from Yemen approximately four months prior to September 11th. From Yemen to Pakistan. That's that I would like to add.

Tribunal President: Personal Representative, do you have any questions for the Detainee?

Personal Representative: No, ma'am, I do not.

Tribunal President: Recorder, do you have any questions for the Detainee?

Recorder: No, ma'am.

Tribunal President: Do any Tribunal members have any questions for the Detainee?

Tribunal Member: Yes, ma'am. How did you get from Yemen to Pakistan?

Detainee: I don't have any responses to any questions.

Tribunal Member: I have one question for the Personal Representative. When you were going through, there was one additional thing on the Exhibit D-A that you didn't read and I just wanted to confirm that statement.

Personal Representative: Yes sir. I would like to add that with regard to the Unclassified Evidence in bullet six, Mohammed did mention that he was not a guard at the AMR camp, but that he was just one of the people who was there waiting.

Tribunal Member: You mentioned that he said, "confirm that dates of his travel from Yemen to Pakistan, four months prior to 9/11." Did he suggest how we confirm that?

Personal Representative: Yes, sir. If I recall from my notes, he suggested that we get his passport, but it was not on file for his case.

Tribunal Member: Did he tell you that he had his passport when he arrived here?

Personal Representative: No, sir.

Tribunal President: Mohammed Ahmed, can you tell me what the AMR camp was?

Detainee: I clarified it to the Personal Representative.

Tribunal President: Personal Representative, did he clarify what the AMR camp was? What kind of camp it was?

Personal Representative: We brought up the question regarding the AMR camp and we were told by way of the translator that it was Omer not AMR. That was the extent to our discussions. I did not ask him about the camp.

Tribunal President: I understand.

Tribunal President: Was it your impression, Personal Representative, that there was a misspelling?

Personal Representative: It is my impression that it was a pronunciation or spelling issue, but in conferring with the Recorder, we were never able to pin down specifically what the difference was.

Tribunal President: Any other Tribunal Members have any other questions?

Tribunal Member: Again, for the Personal Representative. Going back to the question one of other Tribunal Members mentioned. Did the Detainee ask you to or ask us to obtain his passport as a document to be presented to the Tribunal?

Personal Representative: Sir, he brought the fact that he believed the dates in the passport would confirm that he had traveled to Pakistan before September 11th. So, I went to the area that holds the property, but they did not have a record of his passport.

Tribunal Member: Did he suggest that we should have his passport, or did he say it might be some place else? Did he give any idea of where the passport was?

Personal Representative: No sir. That was the extent of our discussion.

***The Tribunal President confirmed that the Personal Representative had no further evidence or previously approved witnesses to present to the Tribunal.***

***The Tribunal President explained the remainder of the Tribunal process to the Detainee and adjourned the open session.***

**AUTHENTICATION**

I certify the material contained in this transcript is a true and accurate summary of the testimony given during the proceedings.

Colonel, U.S. Army
Tribunal President

# DETAINEE ELECTION FORM

Date: 26 October 2004

Start Time: 0840

End Time: 0930

ISN#: 198

Personal Representative: [REDACTED], Major, USAF
(Name/Rank)

Translator Required? YES Language? ARABIC - MODERN

CSRT Procedure Read to Detainee or Written Copy Read by Detainee? YES

---

## Detainee Election:

[X] Wants to Participate in Tribunal

[ ] Affirmatively Declines to Participate in Tribunal

[ ] Uncooperative or Unresponsive

## Personal Representative Comments:

Detainee #198 was briefed on the CSRT process and he has elected to participate in his Tribunal. He will make a verbal statement. When asked if he could think of any witnesses to support his case, he replied no. The detainee acknowledged that he understood me through the interpreter and he was very eager to listen to my explanation of the CSRT process. He appeared very thoughtful and was respectful with his questions and statements. I read the unclassified evidence to the detainee and then the detainee elected to read the translated (Arabic) version as well. Detainee #198 explained that he never fought against the US. He explained that he was with the Taliban before they fought against the US or Northern Alliance. He believes that one point of evidence for him would be his time of travels and he would like us to confirm the dates and time of travel from Yemin to Pakistan, which he says was approximately 4 months prior to Sept 11, 2001. With regards to unclassified evidence bullet 6, detainee #198 stated that he was not a guard at the "Omer" camp (not "AMR") but just one of the people who was sitting around waiting. In the final interview, the detainee elected to attend Tribunal but to not make a statement ref

Personal Representative: [REDACTED]



Exhibit D-a

**Combatant Status Review Board**

TO: Personal Representative

FROM: OIC, CSRT (07 October 2004)

Subject: Summary of Evidence for Combatant Status Review Tribunal – AL ASADI, Mohammed Ahmed Ali

1. Under the provisions of the Secretary of the Navy Memorandum, dated 29 July 2004, *Implementation of Combatant Status Review Tribunal Procedures for Enemy Combatants Detained at Guantanamo Bay Naval Base Cuba*, a Tribunal has been appointed to review the detainee's designation as an enemy combatant.

2. An enemy combatant has been defined as "an individual who was part of or supporting the Taliban or al Qaida forces, or associated forces that are engaged in hostilities against the United States or its coalition partners. This includes any person who committed a belligerent act or has directly supported hostilities in aid of enemy armed forces."

3. The United States Government has previously determined that the detainee is an enemy combatant. This determination is based on information possessed by the United States that indicates that he is a member of the Taliban.

The detainee is a member of the Taliban:

1. The detainee traveled to Afghanistan in March 2001 to fight the Jihad.
2. The detainee stayed at Taliban safe houses.
3. The detainee's travel to Afghanistan was arranged by the Taliban.
4. The detainee stayed at the Taliban embassy in Pakistan.
5. The detainee was issued a Kalishnikov at the "AMR" center.
6. The detainee was a guard at the "AMR" center for the Taliban.
7. The detainee was in Afghanistan during the U.S. bombing campaign.
8. The detainee fled to the Tora Bora Mountains in December 2001.
9. The detainee, along with a large group of Arabs who had fled Afghanistan, was arrested by the police in Pakistan.

4. The detainee has the opportunity to contest his designation as an enemy combatant. The Tribunal will endeavor to arrange for the presence of any reasonably available witnesses or evidence that the detainee desires to call or introduce to prove that he is not an enemy combatant. The Tribunal President will determine the reasonable availability of evidence or witnesses.

Unclassified

**Memorandum**



To : Department of Defense
Office of Administrative Review
for Detained Enemy Combatants
Col. David Taylor, OIC, CSRT

Date 10/05/2004

From : FBI GTMO
Counterterrorism Division
Asst. Gen. Counsel [redacted]

Subject REQUEST FOR REDACTION OF
NATIONAL SECURITY INFORMATION
[redacted]

Pursuant to the Secretary of the Navy Order of 29 July 2004, Implementation of Combatant Review Tribunal Procedures for Enemy Combatants Detained at Guantanamo Bay Naval Base, Cuba, Section D, paragraph 2, the FBI requests redaction of the information herein marked[1]. The FBI makes this request on the basis that said information relates to the national security of the United States[2]. Inappropriate dissemination of said information could damage the national security of the United States and compromise ongoing FBI investigations.

CERTIFICATION THAT REDACTED INFORMATION DOES NOT SUPPORT A DETERMINATION THAT THE DETAINEE IS NOT AN ENEMY COMBATANT

The FBI certifies the aforementioned redaction contains no information that would support a determination that the detainee is not an enemy combatant.

The following documents relative to ISN 198 have been redacted by the FBI and provided to the OARDEC:

FD-302 dated 05/20/2002

---

[1]Redactions are blackened out on the OARDEC provided FBI document.

[2]See Executive Order 12958



Unclassified

Exhibit R-2

Unclassified

Memorandum from [redacted] to Col. David Taylor
Re: REQUEST FOR REDACTION, 10/05/2004

If you need additional assistance, please contact Asst. Gen. Counsel [redacted], [redacted] or Intelligence Analyst [redacted] Intelligence Analyst [redacted]



Unclassified

**Personal Representative Review of the Record of Proceedings**

I acknowledge that on 04 November 2004, I was provided the opportunity to review the record of proceedings for the Combatant Status Review Tribunal involving ISN #198.

_✓_ I have no comments.

___ My comments are attached.



Name

4 NOV 2004

Date



ISN #198
Enclosure (5)