# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

_____
)
**MOHAMMED AHMED ALI AL-ASADI**, )
)
**HAFIZULLAH AHMED ALI AL-ASADI**, )
Next Friend of Mohammed Al-Asadi )
)
Guantánamo Bay Naval Station, )
Guantánamo Bay, Cuba )
      Petitioner, )
)
    v. )
) Case No. 05cv2197-HHK
**GEORGE W. BUSH** )
    President of the United States )
    The White House )
    1600 Pennsylvania Avenue, N.W. )
    Washington, D.C. 20500; )
) **RESPONSE TO COURT'S**
**DONALD RUMSFELD** ) **ORDER TO SHOW CAUSE**
    Secretary, United States ) **WHY CASE SHOULD NOT**
    Department of Defense ) **BE DISMISSED**
    1000 Defense Pentagon )
    Washington, D.C. 20301; )
)
**ARMY BRIG. GEN. JAY HOOD** )
    Commander, Joint Task Force - GTMO )
    APO AE 09360; and )
)
**ARMY COL. MIKE BUMGARNER** )
    Commander, Joint Detention )
    Operations Group - JTF-GTMO )
    APO AE 09360, )
      Respondents. )
_____)

    Petitioner Mohammed Al-Asadi, through undersigned counsel, hereby responds to the Court's Order to Show Cause, filed January 19, 2007, as to why the case should not be dismissed on mootness grounds.

# I.

## BACKGROUND

On December 17, 2006, counsel for Petitioner received an email from the government indicating that Petitioner had been released from custody at Guantanamo. See Dkt. No. 46-2 (Exhibit A). On December 20, 2006, the government informed the Court that Petitioner was "transferred to the Government of Yemen . . . ." Dkt. No. 43. The December 20, 2006, notice simply stated that the release of Petitioner was performed "consistent with the United States' policies and practices pertaining to transfers for release, as described in the Declarations of Ambassador Pierre-Richard Prosper and Deputy Assistant Secretary of Defense Matthew C. Waxman previously filed in this case." Id. No other information was provided. According to the above-referenced declarations, however, "release" of a detainee to a foreign government includes a transfer to a foreign government "for possible detention, investigation, and/or prosecution." Waxman Declaration at ¶ 5.

On December 19, 2006, counsel learned from third parties in Yemen that Petitioner had in fact been transferred to Yemen, but that he was being detained at a political security prison in Sana'a, Yemen. This information precipitated counsel to file a contempt motion against the government for violating this Court's previous order demanding 30-days' notice of any transfer. See Dkt. No. 42-1. That order precluded release of Petitioner "unless such transportation or removal is for the purpose of releasing petitioner Al-Asadi from detention." See Dkt. No. 5.

After the filing of the contempt motion, counsel learned through third parties and media accounts that Petitioner had been released from Yemeni custody. Consequently, counsel withdrew Petitioner's contempt motion. Dkt. No. 48. Counsel has never learned from the government or other parties the exact circumstances of Petitioner's transfer. Counsel is unaware of whether Petitioner was released for "possible detention, investigation, and/or prosecution." Counsel is further unaware whether Petitioner was released under any other conditions, or whether he was released by the government with knowledge that he might be tortured or

otherwise interrogated. Finally, counsel has been unable to communicate directly with Petitioner, and counsel does not know whether Petitioner has been precluded from communicating with counsel by Yemeni authorities as a condition of his release from Yemeni custody or as a condition of any agreement made between the Yemeni government and its United States counterparts.

II.

**THIS COURT RETAINS JURISDICTION TO DETERMINE WHETHER THE GOVERNMENT SHOULD BE HELD IN CONTEMPT**

Upon learning of Petitioner's release from Yemeni custody, counsel withdrew its contempt motion against the government. As far as Petitioner is concerned, his case is now moot. He has obtained all the relief he has requested.

Nevertheless, upon Petitioner's motion, this Court ordered the government not to transport or remove Mr. Al-Asadi from Guantanamo without giving counsel and the court thirty-days' advanced notice of such removal "unless such transportation or removal is for the purpose of releasing petitioner Al-Asadi from detention." Dkt No. 5. In this case, we know that Petitioner was transferred to the Republic of Yemen and placed into immediate detention. This transfer of Petitioner from the custody of American forces at Guantanamo to the custody of Yemeni authorities in a country that has a history of torture and inhumane prison conditions, see Pet's Mtn for Advanced Notice, Dkt. No. 3-1 at 4-6, appears to be a direct violation of this Court's order.

This Court has the inherent power to punish for contempt of its orders. Ex parte Robinson, 86 U.S. 505, 510 (1873). Moreover, this Court retains jurisdiction to insure proper respect and compliance with courts' orders even after an action is settled or otherwise becomes moot. Gompers v. Buck's Stove & Range Co., 221 U.S. 418, 451 (1911) (even when case settles

3

and action becomes moot, it does so "without prejudice to the power and right of the court to punish for contempt by proper proceedings"); see also United States v. Mine Workers, 330 U.S. 258, 294 (same).  This is because a contempt charge is a "separate and independent proceeding at law" that is not part of the original action.  Bray v. United States, 423 U.S. 73, 75 (1975).  Thus, where an attorney or party has "abused the judicial process," i.e., violated a standing order of the court, such an action represents a collateral issue whose resolution may be determined "after the principle suit has been terminated."  Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 396 (1990).

Despite the government's claim that it "released" Petitioner, counsel is aware that Mr. Al-Asadi was placed into immediate custody of Yemeni authorities upon his arrival in Yemen.  Counsel is unaware of the specific details or conditions of Petitioner's transfer.  Counsel does not know the nature of communications between the American government and Yemeni authorities, if any, concerning Petitioner's transfer.  Counsel does not know what information has been shared with the Yemeni government concerning Petitioner. Nor does counsel know if Petitioner's current "release" is conditioned on impermissible terms reached by the two countries' governments.  Counsel does know, however, that the D.C. Circuit has recently held that where a district court prohibits the transfer of a detainee to the detention of another country, "the military will be unable to transfer him either directly *or indirectly by 'releasing' him with a wink-and-a-nod to the* [Yemeni government]."  Omar v. Harvey, 2007 WL 420137 at *11 (D.C. Cir. Feb. 9, 2007) (emphasis added).

Counsel for Petitioner currently does not know the exact manner in which Mr. Al-Asadi was transferred to Yemeni custody.  He does not know the explicit terms upon which Petitioner was transferred; nor does he know what "winks-and-nods," if any, may have occurred between

Respondents the Yemeni authorities, or if any gestures on the part of Respondents resulted in Mr. Al-Asadi's immediate detention upon his arrival in Yemen. What is clear, however, is that this Court retains the jurisdiction and inherent authority to determine whether its Order of November 29, 2005, was violated by the government, and if so, if any remedy or punishment is appropriate to ensure future compliance and respect by Respondents of this Court's orders, particularly considering the numerous other matters still pending before this Court in which Respondents are a party. Counsel for Petitioner has no objection to such proceedings, and will assist the Court in any manner it deems appropriate.

Respectfully submitted,

Date: February 20, 2007

/s/_____
**ELLIS M. JOHNSTON (CA223664)**
Federal Defenders
225 Broadway, Suite 900
San Diego, CA 92101-5030
(619) 685-3719